**ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP**
Roye Zur, Esq.
California Bar No. 273875 *(Admitted Pro Hac Vice)*
Email: *rzur@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499
*[Proposed] General Bankruptcy Counsel for Debtor*

**ANDERSEN BEEDE WEISENMILLER**
Mark M. Weisenmiller, Esq.
Nevada Bar No. 12128
Email: *mark@abwfirm.com*
3199 E Warm Springs Rd, Ste 400
Las Vegas, Nevada 89120
Phone: 702-522-1992
Fax:    702-825-2824
*[Proposed] Local Nevada Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>CONNEMARA HOLDINGS, INC.,<br><br>Debtor. | Case No.: 24-12212-gs<br><br>Chapter 11<br><br>Hearing Date:  July 12, 2024<br>Hearing Time:  9:30 a.m. |

**SUPPLEMENTAL DECLARATION OF ADIB KASSIR IN SUPPORT OF EMERGENCY MOTION FOR ORDER COMPELLING RECEIVER TO TURN OVER PROPERTY PURSUANT TO 11 U.S.C. § 543(a) AND (b)**

I, Adib Kassir, hereby state as follows under penalty of perjury:

1.     I am over the age of 18 and mentally competent.  I am the principal of Connemara Holdings, Inc., debtor and debtor-in-possession in the above-captioned bankruptcy case ("**Debtor**"). Debtor is owned 100% by Medconsult, S.A.L. ("**Medconsult**"), a Lebanese joint stock company.  I am also the principal and majority shareholder of Medconsult.

2. I make this supplemental declaration in support of the *Emergency Motion for Order Compelling Receiver to Turn Over Property Pursuant to 11 U.S.C. § 542(a) and (b)* ("**Motion**").[1]

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information learned from my review of relevant documents, and information supplied to me by Debtor's and Medconsult's various business and legal advisors. If called upon to testify as to the content of this Declaration, I could and would competently do so.

4. In the Motion, Debtor requests the issuance of an order compelling Jim Skorheim, the receiver appointed in the state court proceeding entitled *The People of the State of California v. Munir Uwaydah, et al.*, Case No. BA425397 (the "**Uwaydah Criminal Action**") pending in the Superior Court of California, County of Los Angeles (the "**State Court**"), to turn over property of the estate pursuant to 11 U.S.C. § 543(a) and (b).

**A.   Background Regarding the Debtor and the Property**

5. The Debtor is a Nevada corporation with its principal place of business located at 123 West Nye Lane, Suite 129, Carson City, NV 89706.

6. The Debtor owns and operates real property comprising three (3) residential rental units located at 5509 Ocean Front Walk, Marina del Rey, CA 90292 (the "**Property**").

7. The Debtor is owned 100% by Medconsult, S.A.L. ("**Medconsult**"), a Lebanese joint stock company. I am the Debtor's principal and am also the principal of Medconsult. At all relevant times, I have resided in Beirut, Lebanon.

**B.   Uwaydah's Debt to Medconsult**

8. Medconsult provides consulting services related to projects in the health care industry. On February 1, 2004, Medconsult and Munir Uwaydah, MD entered into a consulting services agreement pursuant to which Mr. Uwaydah was hired to serve as a consultant to Medconsult regarding contemplated transactions in various Middle Eastern countries. In 2004, a dispute arose between Medconsult and Mr. Uwaydah because of the latter's refusal to honor the terms of the consulting agreement. The dispute was adjudicated through a Lebanese arbitration under Lebanese law. The

---

[1] Capitalized terms used but not defined herein are used as defined in the Motion.

arbitrator found in favor of Medconsult and awarded it $10,000,000 USD on September 6, 2004.  See **Exhibit "1"** hereto (2004 Arbitration Award entered by the Lebanese Court on October 25, 2004, and certified translation) for a true and correct copy of the 2004 Arbitration Award entered by the Lebanese Court on October 25, 2004, and certified translation.

9. On September 20, 2004, Medconsult, Mr. Uwaydah and Mr. Uwaydah's medical practice, a company called Munir Uwaydah, M.D., Inc., entered into a release and settlement agreement (the "**2004 Settlement Agreement**") pursuant to which Munir Uwaydah, M.D., Inc. agreed, among other things, to pay Medconsult damages in the amount of $7 million in monthly installments at 3% interest.  See **Exhibit "2"** hereto (2004 Settlement Agreement) hereto for a true and correct copy of the 2004 Settlement Agreement.  In the event of default by Munir Uwaydah, M.D., Inc., the full amount of the principal became due.  In addition, Mr. Uwaydah granted Medconsult a security interest in the receivables of his medical practice, Munir Uwaydah, M.D., Inc.

10. Medconsult filed a UCC statement with the California Secretary of State documenting the agreement between Medconsult, Mr. Uwaydah and Mr. Uwaydah's related entities that had guaranteed Mr. Uwaydah's indebtedness to Medconsult.  See **Exhibits "3"** (2004 UCC Filing) and "**4**" (UCC Search Results) hereto for true and correct copies of the 2004 UCC Filing and UCC Search Results.  This filing was done in 2004, as part of Medconsult's efforts to recover sums owed to it by Mr. Uwaydah.

11. In 2005, Mr. Uwaydah defaulted on his obligations under that agreement by failing to timely make a required payment.  In response, Medconsult informed Mr. Uwaydah that it intended to exercise its rights under that agreement, including initiating a foreclosure on the assets pledged as collateral, and commencing civil or criminal proceedings against Mr. Uwaydah in Lebanon.

12. Ultimately, Medconsult and Mr. Uwaydah negotiated an amendment to the 2004 Settlement Agreement which they entered into on October 14, 2005 (the "**2005 Settlement Agreement**") pursuant to which Mr. Uwaydah agreed to pay Medconsult $6.6 million with monthly payments of $50,000 and interest accruing at 6.75% on the unpaid balance.  See **Exhibit "5"** hereto (2005 Settlement Agreement) for a true and correct copy of the 2005 Settlement Agreement.  Mr.

Uwaydah also provided a security interest in all of his assets, including without limitation Frontline Medical Associates, Inc.("**Frontline**"), Los Angeles Health Partners Medical Group, Inc., Sentinel Health Medical Group, Inc., to Medconsult. See **Exhibit "6"** hereto (Multiple UCC Financing Statements and searches) for a true and correct copies of the Multiple UCC Financing Statements and searches.

13. From 2005 to 2010, payments were made to Medconsult by Frontline to reduce Mr. Uwaydah's obligation to Medconsult. See **Exhibit "7"** hereto (Frontline payments to Medconsult 2006 to 2012) for a true and correct copy of the Frontline payments to Medconsult 2006 to 2012.

14. The Property was conveyed to Medconsult through a two-step process in 2010 as part of an agreement between Medconsult and Mr. Uwaydah to reduce his indebtedness pursuant to the 2005 Settlement Agreement.

15. In 2010, at the request of Mr. Uwaydah, Dr. Turley conveyed the Property first to the Debtor pursuant to a recorded grant deed ("**Property Transfer**"). See **Exhibit "8"** hereto (Grant Deed) for a true and correct copy of the Grant Deed. He then transferred all rights and ownership of the Debtor to Medconsult in 2010 ("**Share Transfer**"), resulting in Medconsult indirectly owning the Property pursuant to its sole ownership of the Debtor, the record owner of the Property.[2] See **Exhibit "9"** hereto (Agreement For Purchase and Sale of Stock) for a true and correct copy of the Agreement For Purchase and Sale of Stock.

16. Maria Turley also signed documents in order to eliminate any alleged community property interest in the property or entity. See **Exhibits "10"** (Spousal Consent to Agreement For Purchase and Sale of Stock), and **"11"** (Quitclaim Deed) hereto for a true and correct copies of the Spousal Consent to Agreement For Purchase and Sale of Stock and Quitclaim Deed.

17. Although Paul Turley was holding title to the Property for Mr. Uwaydah, he was paid $10,000, in two installments, for assigning his interest in the Debtor to Medconsult. See **Exhibit "12"**

---

[2] While the Property Transfer and the Share Transfer occurred in October 2010, Medconsult did not record the deeds memorializing such transfers until February 2015, because doing so would have triggered due on sale clauses in the mortgages and resulted in the loans becoming accelerated. Because Mr. Uwaydah caused the transfer of multiple properties to Medconsult with mortgages aggregating approximately $10 million, I did not want to risk triggering the acceleration of the loans without the liquidity sufficient to satisfy those mortgages. I did not obtain such liquidity until February 2015.

hereto (check and receipt for payment to Turley) for true and correct copies of the check and receipt for the $5,000 payment.  See also **Exhibit 9** hereto (Agreement For Purchase and Sale of Stock), p. 1 § 2(a).  Consistent with the above-described transaction, Medconsult, Mr. Uwaydah, Dr. Turley, and Frontline executed a Cancelation of Indebtedness and Release Agreement on October 5, 2010.  See **Exhibit "13"** hereto **(**Cancelation of Indebtedness and Release Agreement**)** for a true and correct copy of the Cancelation of Indebtedness and Release Agreement, whereby Medconsult reduced Mr. Uwaydah's indebtedness by one million US dollars in consideration for the transfer of all the shares of Debtor to Medconsult.

18. Since October 2010, Medconsult and the Debtor have been solely responsible for paying all mortgages, taxes, and expenses associated with the Property.

19. Medconsult is a Lebanese joint stock corporation with a three-person board of directors. No member of its board was ever a defendant in any criminal proceeding.  See **Exhibit "14"** hereto (Statement of Economic Right Owner) for a true and correct copy of the Statement of Economic Right Owner.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of June, 2024.

*/s/ Adib Kassir*
ADIB KASSIR