# EXHIBIT 1

THE GRAND JURY OF THE COUNTY OF LOS ANGELES

STATE OF CALIFORNIA

THE PEOPLE OF THE STATE OF CALIFORNIA,    )
                                          )
                            PLAINTIFF,    )
                                          )
                     VS.                  )    NO. BA425397
                                          )
MUNIR UWAYDAH,                            )
PAUL TURLEY,                              )
MARIA TURLEY,                             )
MARISA SCHERMBECK-NELSON,                 )
PETER NELSON,                             )
DAVID JOHNSON, M.D.                       )
LETICIA ALVAREZ LEMUS,                    )
JEFF STEVENS,                             )
WENDEE LUKE,                              )
KELLY PARK AND                            )
RON CASE,                                 )
                                          )
                          DEFENDANTS.     )
_____)

REPORTER'S TRANSCRIPT OF GRAND JURY PROCEEDINGS

FEBRUARY 4, 2015

APPEARANCES:

        DAYAN MATHAI, CYNTHIA NAKAO AND KAREN NISHITA,
        DEPUTIES DISTRICT ATTORNEY OF THE COUNTY OF
        LOS ANGELES, REPRESENTING THE OFFICE OF THE
        DISTRICT ATTORNEY.

        VALERIE AENLLE-ROCHA, DEPUTY DISTRICT ATTORNEY
        OF LOS ANGELES COUNTY AND LOS ANGELES COUNTY
        GRAND JURY ADVISOR.

        JEANNE C. IANNONE, CSR #3140, DULY APPOINTED
        AND SWORN AS THE OFFICIAL STENOGRAPHIC REPORTER
        OF THE LOS ANGELES COUNTY GRAND JURY.

VOLUME 1 OF 12              JEANNE C. IANNONE, CSR #3140
PAGES 1 THROUGH 133        OFFICIAL REPORTER

98

1        Q.        OKAY.  SO THE CLIENTS A LOT OF BLUE COLLAR

2    WORKERS THAT MAY HAVE BEEN INJURED IN THE JOB?

3        A.        OR ALLEGING AN INJURY.

4        Q.        OKAY.  DID YOU SEE FRONTLINE CHANGE OVER

5    THE COURSE OF YOUR INVESTIGATION?

6        A.        YES.

7        Q.        WHAT DID YOU SEE?

8        A.        IT MORPHED INTO AN ENTITY CALLED

9    FIRSTLINE, WHICH WAS A TRADE NAME REGISTERED BY PAUL

10   TURLEY ORIGINALLY.

11       Q.        OKAY.  AND WHEN YOU SAY MORPHED, DID YOU

12   SEE SOME SIMILARITIES IN THE PRACTICES OF FIRSTLINE

13   VIS-A-VIS WHAT YOU OBSERVED IN FRONTLINE?

14       A.        THERE WAS A BIG DIFFERENCE BETWEEN THE

15   TWO.  FRONTLINE, IF YOU WILL, WAS A ONE STOP TYPE PROVIDER

16   WHERE IT PROVIDED THE EXAMS, PROVIDED PHYSICAL THERAPY,

17   PROVIDED MEDICATIONS, OR APPEARED TO PROVIDE MEDICATIONS

18   THROUGH ONE OF THEIR ENTITIES.

19            IT APPEARED THAT THROUGH PUBLIC RECORDS

20   ANYWAY THAT SURGERIES WERE PERFORMED AT A SURGICAL CENTER

21   CONTROLLED BY ONE OF THE PARTIES INVOLVED IN THE

22   OWNERSHIP, WHAT APPEARED TO BE OWNERSHIP.

23       Q.        WHO IS THAT?

24       A.        MUNIR UWAYDAH.

25       Q.        IS THAT SOUTH BAY SURGICAL?

26       A.        YES, SIR.

27       Q.        OKAY.

28       A.        IN 2010.

471

```
 1        A.        UP UNTIL THE INVESTIGATION.

 2        Q.        OKAY.  WAS THERE AN INVESTIGATION OF SOME

 3   TYPE IN THE SUMMER OF 2010?

 4        A.        YES.

 5        Q.        OKAY.  AND WAS THAT, WITHOUT TELLING US

 6   ANY DETAILS ABOUT THE INVESTIGATION, WAS THAT A BIG DEAL

 7   AROUND THE OFFICE?

 8        A.        YES, IT WAS.

 9        Q.        DID IT HAVE SOME EFFECT OF DISRUPTING THE

10   NORMAL EVERYDAY WORKINGS OF FRONTLINE?

11        A.        YES, IT DID.

12        Q.        FROM YOUR EXPERIENCE, AGAIN ONLY BASED ON

13   YOUR KNOWLEDGE, DID FRONTLINE CHANGE IN THE SUMMER OF 2010

14   AT THE TIME THAT THIS INVESTIGATION WAS GOING ON?

15        A.        YES, IT DID.

16        Q.        TELL US WHAT YOU OBSERVED CHANGING

17   YOURSELF.  WHAT DID YOU YOURSELF OBSERVE IN THE CHANGES?

18        A.        WE WENT FROM HAVING 12 CLINICS TO HAVING

19   THREE.

20        Q.        OKAY.  SO IMMEDIATELY OR OVER THE COURSE

21   OF TIME --

22        A.        WITHIN A WEEK.

23        Q.        SO WITHIN A WEEK YOU WENT FROM 12 CLINICS

24   TO THREE CLINICS?

25        A.        UH-HUH.

26        Q.        IS THAT A YES?

27        A.        YES.

28        Q.        AND WHAT ABOUT THE STAFFING, WHAT HAPPENED
```

472

1    WITH THE STAFF?

2          A.          THE SITE WHERE I WAS WORKING WENT DOWN TO

3    MAYBE 10 PERCENT OF THE STAFF.

4          Q.          OKAY.  AND WAS THAT AT ALL THE CLINICS OR

5    JUST AT SAN FERNANDO?

6          A.          AT ALL THE CLINICS.

7          Q.          OKAY.  SO A LOT OF PEOPLE LEFT THE

8    ORGANIZATION?

9          A.          CORRECT.

10         Q.          WERE THEY TOLD TO LEAVE OR DID THEY LEAVE

11   VOLUNTARILY, DO YOU KNOW?

12         A.          I DON'T KNOW.

13         Q.          DID YOU STAY OR DID YOU LEAVE?

14         A.          I STAYED.

15         Q.          OKAY.  DID THE ORGANIZATION -- SO THE

16   ORGANIZATION CONTINUED BUT ON A MUCH SMALLER SCALE.  WAS

17   THERE A CHANGE OF NAME OF THE ORGANIZATION?

18         A.          YES, IT WAS.

19         Q.          WHAT WAS THE CHANGE IN THE NAME?

20         A.          IT WENT FROM FRONTLINE MEDICAL TO

21   FIRSTLINE HEALTH.

22         Q.          OKAY.  OTHER THAN THE NAME CHANGE, AND

23   OBVIOUSLY THE LOWER NUMBER OF STAFF, WAS THE OPERATION OF

24   WHAT THE CLINICS WERE DOING OR THE CLINIC WAS DOING THE

25   SAME?

26         A.          A FEW THINGS CHANGED SO, NO, IT WASN'T THE

27   SAME.

28         Q.          OKAY.  DID NEW PEOPLE COME IN IN THE

473

1    MANAGEMENT POSITIONS AFTER THE NAME CHANGE?

2         A.      NO.

3         Q.      WAS MARIA TURLEY STILL LIKE IN A

4    MANAGEMENT POSITION?

5         A.      MARIA TURLEY, SHE WILL COME AND GO.

6         Q.      OKAY.  MY QUESTION WAS, WAS SHE STILL IN

7    LIKE AN AUTHORITATIVE POSITION?

8         A.      YEAH.  WHEN SHE WAS IN THE OFFICE, YEAH.

9         Q.      OKAY.

10        A.      YES.

11        Q.      WHAT ABOUT DR. PAUL TURLEY?

12        A.      HE, AFTER THE INVESTIGATION, I REALLY

13   DIDN'T SEE HIM, MUCH OF HIM IN THE OFFICE.

14        Q.      OKAY.  WHAT ABOUT WENDEE LUKE?

15        A.      SHE KIND OF TOOK OVER THE MANAGER OF THE

16   ORGANIZATION PER SE, LIKE THE DIRECTOR.

17        Q.      OKAY.

18        A.      YEAH.

19        Q.      DID -- WAS THERE EVER AN INCIDENT IN THAT

20   SUMMER OF 2010 WHERE ANYTHING HAPPENED TO EITHER FILES OR

21   MEDICATIONS THAT WERE AT FRONTLINE CLINIC, AT THE

22   FRONTLINE CLINIC?

23        A.      YES.

24        Q.      OKAY.  CAN YOU DESCRIBE, AGAIN I DON'T

25   WANT TO HEAR WHAT ANYONE TOLD YOU, BUT IF YOU PERSONALLY

26   OBSERVED ANYTHING, TELL US WHAT YOU OBSERVED.

27        A.      IN THE SUMMER OF 2010, I OBSERVED BOXES OF

28   MEDICATION BEING DROPPED OFF AT THE SAN FERNANDO SITE.

1027

1

2               (PAUSE IN THE PROCEEDINGS.)

3

4        Q.        BY MS. NISHITA:  MISS MARTINEZ, AFTER YOU

5   GOT THAT CALL, DID YOU TELL ANYONE ABOUT THAT CALL?

6        A.        I TOLD LETTY.

7        Q.        AND WHEN YOU TOLD LETTY, WHAT -- DID SHE

8   SAY ANYTHING TO YOU?  DID SHE GIVE YOU ANY KIND OF ADVICE?

9        A.        SHE WAS JUST VERY REASSURING, TELLING ME

10  NOT TO BE AFRAID.

11       Q.        OKAY.  DID SHE SAY ANYTHING ELSE TO YOU?

12       A.        SHE OFFERED ME AN ATTORNEY.

13       Q.        DID SHE GIVE YOU -- DID SHE OFFER YOU A

14  SPECIFIC ATTORNEY OR DID SHE SAY ANY ATTORNEY?

15       A.        HE -- SHE REFERRED ME TO BENJAMIN GLUCK.

16       Q.        BENJAMIN GLUCK?

17       A.        YEAH.

18       MS. AENLLE-ROCHA:  IS THAT A YES?

19       THE WITNESS:  YES.

20       Q.        BY MS. NISHITA:  DID SHE ALSO TELL YOU

21  ANYTHING ELSE ABOUT TALKING TO ANYONE ELSE?

22       A.        SHE JUST TOLD ME NOT TO TAKE THOSE CALLS

23  NO MORE, DON'T TALK, DON'T SAY ANYTHING, TALK TO BENJAMIN

24  AND I DID TALK TO HIM.

25       Q.        OH, YOU DID TALK TO HIM?

26       A.        OKAY.

27       MS. AENLLE-ROCHA:  DON'T TELL US ANYTHING YOU

28  DISCUSSED WITH HIM.

1028

1    THE WITNESS:  OH, OKAY.

2    Q.    BY MS. NISHITA:  NOW, MISS MARTINEZ, WHO

3   PAID FOR YOUR LAWYER?

4    A.    THEY OFFERED TO PAY, WENDEE AND

5   DR. UWAYDAH.

6    Q.    WENDEE AND DR. UWAYDAH OFFERED TO PAY?

7    A.    UH-HUH.

8    MS. AENLLE-ROCHA:  IS THAT A YES?

9    THE WITNESS:  YES.

10    Q.    BY MS. NISHITA:  AND THEN YOU RESIGNED; IS

11   THAT RIGHT?

12    A.    CORRECT.

13    Q.    DO YOU REMEMBER ABOUT WHAT TIME, WHAT THE

14   DATE WAS, THE TIME THAT YOU RESIGNED?

15    A.    I LEFT IN SEPTEMBER OF 2011.

16    Q.    NOW, AFTER YOU LEFT OR YOU RESIGNED, DID

17   YOU MAKE ANY CALLS TO COMPLAIN ABOUT ANYTHING?

18    A.    NO, NOT AFTER I LEFT.

19    Q.    OH, DID YOU DO IT BEFORE?

20    A.    YEAH, WHEN I WAS STILL EMPLOYED.

21    Q.    TELL US ABOUT THAT.

22    A.    I CALLED SCIF, THE INSURANCE COMPANY.

23    Q.    WHY?

24    A.    I JUST WANTED TO REPORT WHAT THEY WERE

25   DOING.

26    Q.    WHAT DID YOU -- WHAT WERE THEY DOING?

27   WHAT DID YOU REPORT?

28    MS. AENLLE-ROCHA:  WAIT, HOLD ON.

1815

1   ARE THE BUSINESS ACCOUNTS THAT I FOCUSED ON.  THEN ACCOUNT

2   NO. 25 WOULD BE AN ACCOUNT FOR KELLY PARK AT BANK OF

3   AMERICA, ACCOUNT NO. 6 WOULD BE THE NELSONS AT JP MORGAN,

4   THEN THERE WILL BE THE FOUR BANK ACCOUNTS FROM 27 THROUGH

5   30 OF JEFF STEVENS AND SOME CASES WITH HIS WIFE.

6           THEN 31, 32 ARE CONTROLLED HEALTH

7   MANAGEMENT IN CITIBANK AND THEN THE BALANCE SIX ACCOUNTS

8   FROM FARMERS AND MERCHANTS.

9        Q.      OKAY.  SO 33 THROUGH 38 FROM THE FARMERS

10  AND MERCHANT BANK?

11       A.      YES.

12       Q.      OKAY.  AND REGARDING THESE 38 ACCOUNTS,

13  WHAT TYPE OF ANALYSIS DID YOU DO WITH REGARDS TO THESE

14  ACCOUNTS?

15       A.      FOR THE 24 BUSINESS ACCOUNTS, I FOLLOWED

16  THE MONEY IN AND OUT OF EACH OF THESE ACCOUNTS.

17       Q.      AND WHAT DO YOU MEAN BY THE FLOW OF MONEY?

18  WHAT DOES THAT MEAN?

19       A.      BASICALLY LIKE, FOR EXAMPLE, FOR FRONTLINE

20  MEDICAL, ACCOUNT NO. 1, WHAT I DID IS I WENT THROUGH THE

21  DETAILED INFORMATION AND TRYING TO FIGURE OUT HOW MUCH

22  MONEY WENT INTO THE OTHER 23 BANK ACCOUNTS.

23       Q.      OKAY.  AND SO FOR THE 24 BUSINESS

24  ACCOUNTS, DID YOU PREPARE A SEPARATE SCHEDULE OR CHART TO

25  SHOW THE FLOW OF THE FUNDS BETWEEN THE ACCOUNTS?

26       A.      YES.

27       Q.      AND IS THAT EXHIBIT 81, WHICH YOU BROUGHT

28  WITH YOU?

1816

1    A.    YES.

2    Q.    AND IT'S BEING PRESENTED.

3          WHAT OTHER TYPE OF ANALYSIS DID YOU DO

4    WITH REGARDS TO THE 38 ACCOUNTS?

5    A.    SO, IN ADDITION, WHAT WE WENT THROUGH THE

6    INFORMATION WITHIN THE 24 BANK ACCOUNTS, ALSO INCLUDING

7    CITIBANK AND FARMERS MERCHANT AND WE WERE FOLLOWING MONEY

8    FROM THESE ACCOUNTS TO JEFF STEVENS, THE NELSONS AND ALSO

9    KELLY PARK AND RONNIE CASE.

10   Q.    OKAY.  AND IS THAT -- IS THAT ANALYSIS --

11   WAS THAT PREPARED AND PUT INTO A SCHEDULE OR CHART WHICH

12   IS NOW EXHIBIT 82?

13   A.    YES.

14   Q.    AND DID YOU PREPARE THAT EXHIBIT?

15   A.    YES.

16   Q.    AND ANY ADDITIONAL ANALYSIS THAT WAS DONE?

17   A.    YES.  I ALSO REVIEWED ALL THE BANK

18   ACCOUNTS INCLUDED IN EXHIBIT 80, AND TO DETERMINE THE

19   NUMBER, I MEAN THE AMOUNT OF INTERNATIONAL TRANSFERS THAT

20   WERE TRANSFERRED OUT FROM THESE ACCOUNTS.

21   Q.    OKAY.  AND IS THAT INFORMATION PREPARED ON

22   A SCHEDULE WHICH -- BY YOU AND IS NOW EXHIBIT 83?

23   A.    YES.

24   Q.    SO I WANT TO TALK ABOUT EACH OF THESE IN

25   TURN.  LET ME START WITH EXHIBIT 80, WHICH HAS THE BLUE

26   COLOR ON THE FRONT AND WHICH IS ON THE OVERHEAD.

27         WERE YOU ABLE TO -- YOU SAID YOU WERE

28   ANALYZING THE TOTAL -- THE FLOW OF FUNDS FROM THE 24

1825

1      A.        FLOWING INTO IT OR OUT?

2      Q.        OUT.

3      A.        OUT OF IT WOULD BE PAGE -4.

4      Q.        OKAY.  LET'S GO TO THAT.

5      A.        SO PAGE -4 WOULD SHOW MONEY LEAVING EACH

6 OF THESE ACCOUNTS LISTED ON THE TOP.

7      Q.        OKAY.  SO IT'S PAGES -3 AND -4, CORRECT?

8      A.        YES, CORRECT.

9      Q.        OKAY.  SO THE TOTAL ON PAGE -4, SO IT

10 APPEARS THAT THE TOTAL FOR MARISA SCHERMBECK DBA IS

11 $10,000,000; IS THAT CORRECT?

12      A.        YES.  THAT LEFT HER ACCOUNT.

13      Q.        OKAY.  AND THEN BY LOOKING AT THIS --

14 THESE FOUR PAGES OF THIS EXHIBIT, CAN YOU TELL THE FLOW OF

15 MONEY BETWEEN ALL THESE 24 ACCOUNTS AND WHICH ACCOUNTS

16 THAT, FOR LACK OF A BETTER TERM, THE OTHER ACCOUNTS?

17      A.        YES.  I MEAN MOST THE ACTIVITY RAN THROUGH

18 THE MARISA SCHERMBECK DBA SCHERMBECK MANAGEMENT ACCOUNT,

19 SO, AND AT THE TIME THERE WERE APPROXIMATELY 46 MILLION

20 THAT RAN THROUGH THIS ACCOUNT, IN AND OUT OF THIS -- BY

21 THE SAME ACCOUNTS.

22      Q.        OKAY.  SO THAT AMOUNT OF MONEY FLOWED

23 WITHIN THESE 24 ACCOUNTS, THESE FAMILY OF ACCOUNTS?

24      A.        YES.

25      Q.        SO WAS THERE ADDITIONAL MONEY THAT FLOWED

26 OUTSIDE OF THESE ACCOUNTS TO OTHER ENTITIES?

27      A.        YES.

28      Q.        OKAY.  AND SO THAT NUMBER YOU GAVE US, I

1827

```
 1          JUST TO SEE, YOU KNOW, WHICH ACCOUNT
 2   DIDN'T HAVE MONEY, OR ANOTHER REASON IS JUST SO THAT IT
 3   WOULD BE SO CONVOLUTED THAT YOU REALLY CAN'T TRACE THE
 4   FUNDS.  IT'S JUST TOO DIFFICULT TO TRY TO FOLLOW ANY
 5   SPECIFIC DOLLAR AMOUNT FROM ONE ACCOUNT TO THE NEXT.
 6          Q.       BECAUSE MONEY WAS CONSTANTLY BEING
 7   TRANSFERRED?
 8          A.       CORRECT.
 9          Q.       OKAY.  LET'S MOVE ONTO EXHIBIT 82.  WHAT
10   IS -- THIS APPEARS TO BE FOUR PAGES -- I'M SORRY, THREE
11   PAGES.  WHAT'S REPRESENTED ON EACH OF THESE PAGES?
12               DID YOU PREPARE THIS CHART?
13          A.       YES.
14          Q.       AND WHAT DO THESE THREE PAGES SHOW?
15          A.       THESE THREE PAGES SHOW THAT BASED ON ALL
16   THE ACCOUNTS, OR ACTUALLY ALL OF THEM ACTUALLY CAME FROM
17   THE 24 BUSINESS ACCOUNTS THAT WE LOOKED AT, HOW MUCH MONEY
18   WAS GOING TO EACH OF THE SPECIFIC TARGETS.
19          Q.       OKAY.  SO WERE YOU ASKED SPECIFICALLY TO
20   FOCUS YOUR INVESTIGATION FOR PURPOSES OF THIS GRAND JURY
21   ON SPECIFIC INDIVIDUALS, SPECIFICALLY JEFF STEVENS, MARISA
22   AND PETER NELSON AND KELLY PARK AND RON CASE?
23          A.       YES.
24          Q.       AND ARE THESE THREE PAGES REPRESENTING
25   WHAT YOU FOUND IN REGARDS TO THOSE INDIVIDUALS?
26          A.       YES.
27          Q.       AND AGAIN WHAT'S THE TIMEFRAME THAT IS
28   BEING COVERED BY THESE CHARTS?
```

1828

1    A.    APPROXIMATELY JUNE 7, 2006, THROUGH JUNE

2  30TH, 2010.

3    Q.    OKAY.  AND WHAT DOES PAGE -1 OF EXHIBIT 82

4  SHOW US?

5    A.    PAGE -1 SHOWS WHAT FUNDS WENT TO JEFF

6  STEVENS, SO IT SHOWS THAT THERE WERE TRANSFERS OR CHECKS

7  DEPOSITED -- I MEAN FROM THESE VARIOUS -- THE 26 BANK

8  ACCOUNTS TO JEFF STEVENS IN THE TOTAL AMOUNT OF

9  $1,197,000.

10            THEN THERE WAS CHECKS THAT, VARIOUS CHECKS

11  THAT WERE WRITTEN TO HIM FROM THESE ACCOUNTS, AND THAT

12  TOTAL WAS $522,365.

13    Q.    OKAY.  FOR THE TOTAL OF EITHER

14  DISBURSEMENTS BY WIRE, CASH OR CHECK WAS 1.7 MILLION?

15    A.    JUST WIRE OR CHECKS, YES, 1.7 MILLION.

16    Q.    OKAY.  AND AGAIN THAT'S FOR A FOUR-YEAR

17  TIME PERIOD.

18            I NOTICE ACROSS THE TOP THERE'S PARTICULAR

19  ACCOUNTS.  DID YOU LOOK AT ALL 24 ACCOUNTS?

20    A.    YES.

21    Q.    AND OUT OF THE 24, THESE ACCOUNTS HAD

22  DISBURSEMENTS TO JEFF STEVENS' ACCOUNTS?

23    A.    YES.

24    Q.    THANK YOU.

25            LET'S GO TO PAGE -2 OF EXHIBIT 82.

26            WHAT DOES THIS PAGE SHOW US?

27    A.    THIS SHOWS FUNDS FROM PETER AND MARISA

28  NELSON.

1829

1    Q.         AGAIN WHAT TIME PERIOD IS COVERED BY THIS

2    CHART?

3    A.         JUNE 7, 2006, THROUGH JUNE 30TH, 2010.

4    Q.         OKAY.  AND WHAT INFORMATION IS HERE?

5    A.         WE FOUND THAT THERE WERE TRANSFER TO

6    MARISA NELSON SCHERMBECK OF $470,000.  THERE WERE MONEY

7    GOING INTO HER JP MORGAN ACCOUNT ENDING AT 8414 FOR

8    $369,000.  THERE WAS ALSO MONEY GOING TO MARISA SCHERMBECK

9    AT ONE WEST ACCOUNT ENDING IN 9990 OF $5000, AND THEN ALSO

10   FUNDS DEPOSITED INTO A JOINT ACCOUNT BY PETER NELSON AND

11   MARISA SCHERMBECK-NELSON AT JP MORGAN ENDING IN 5296,

12   TOTAL OF $1,105,323.

13   Q.         OKAY.  SO THE TOTAL FOR THAT FOUR-YEAR

14   PERIOD FOR THESE ACCOUNTS WERE 1.9 MILLION DOLLARS,

15   CORRECT?

16   A.         YES.

17   Q.         AND I NOTICE THAT THE FIRST COLUMN IS

18   FRONTLINE MEDICAL ASSOCIATES.  SO OUT OF THE ONE MILLION,

19   946,000 OF IT CAME FROM THAT ONE FRONTLINE ACCOUNT, RIGHT?

20   A.         YES.

21   Q.         THANK YOU.

22              LET'S GO TO PAGE -3 OF THIS EXHIBIT 82.

23   WHAT DOES THIS PAGE SHOW US?

24   A.         THIS SHOWS FUNDS GOING TO KELLY PARK OR

25   RONNIE CASE, AND THERE WERE TWO ACCOUNTS THAT WERE -- THEY

26   WERE BOTH CO-SIGNERS.

27   Q.         OKAY.  WHY DON'T YOU WALK US THROUGH THIS

28   INFORMATION PIECE BY PIECE SO WE UNDERSTAND WHAT'S

1830

1    REPRESENTED HERE.

2        A.        SO WE HAD INFORMATION EITHER CHECK WRITTEN

3    OR MONEY TRANSFERRED TO KELLY PARK AT $170,259.

4        Q.        YOU'RE GETTING THAT FROM THE RIGHT COLUMN

5    WHERE IT SAYS "TOTAL," CORRECT?

6        A.        CORRECT.

7        Q.        THE SECOND ENTRY DOWN?

8        A.        YES.

9        Q.        OKAY.

10       A.        THEN WE HAD FUNDS TO KELLY PARK ACCOUNT AT

11   BANK OF AMERICA ENDING IN 1840 OF $565,679.  WE HAD A

12   TRANSFER OR CHECK TO JUST BASICALLY KELLY PARK SHERWOOD

13   FINANCIAL OF $110,000.

14                 THEN THERE WERE MONEY DEPOSITED INTO THE

15   SHERWOOD FINANCIAL INVESTMENT ACCOUNT AT BANK OF AMERICA

16   ENDING IN 2149 TOTALLING $1,502,663.

17       Q.        OKAY.  SO JUST A TOTAL FOR ACCOUNTS

18   RELATED TO KELLY PARK AS THE SOLE SIGNER, THERE WAS

19   $2,300,000 WITHIN WHAT TIME PERIOD?

20       A.        WITHIN -- YEAH.  SO SAY WITHIN JUNE 6,

21   2007, THROUGH JUNE 30TH, 2010.

22       Q.        OKAY.  SO APPROXIMATELY THREE YEARS?

23       A.        YES.

24       Q.        HOW ABOUT RONNIE CASE, WHICH IS THE NEXT

25   SECTION DOWN.

26       A.        RONNIE CASE, THERE WERE CHECKS WRITTEN TO

27   RONNIE CASE TOTALLING $32,500, AND THERE WERE CHECKS

28   DEPOSITED INTO -- I MEAN MADE OUT -- OR TRANSFERRED TO

1831

1    HIM, I'M SORRY, BEVERLY HILLS 310, INC. OF $801,622.

2         Q.        FOR A TOTAL OF?

3         A.        $834,122.

4         Q.        AGAIN IS THAT THE SAME THREE YEAR TIME

5    PERIOD?

6         A.        YES.

7         Q.        AND THE NEXT SECTION DOWN APPEARS TO BE OF

8    TWO ACCOUNTS.   WHAT ARE THOSE TWO ACCOUNTS?

9         A.        SO THERE WERE TWO BUSINESS ACCOUNTS, ONE

10   IS RONNIE CASE MOTORSPORTS AT WASHINGTON MUTUAL ENDING IN

11   2174 AND THEN AN ACCOUNT IS SHARED WITH VENTURE LLC DBA

12   THOROUGHBRED TRAINER PROFILES AT WASHINGTON MUTUAL ENDING

13   IN 5008, AND BOTH OF THESE ACCOUNTS ARE JOINT ACCOUNTS

14   CO-SIGNER BY RONNIE CASE AND KELLY PARK.

15        Q.        OKAY.   AND THE TOTAL FOR THOSE TWO

16   ACCOUNTS?

17        A.        $731,755.

18        Q.        AND SO THAT NUMBER IS ON TOP OF THE

19   PREVIOUS TWO NUMBERS OF 2.3 MILLION AND 834,000 IN THEIR

20   INDIVIDUAL ACCOUNTS, CORRECT?

21        A.        YES.

22        Q.        SO JUST TO BE CLEAR, ALL THIS MONEY THAT

23   IS BEING DISTRIBUTED TO THOSE ACCOUNTS COME FROM THE

24   ACCOUNTS ACROSS THE TOP OF THIS CHART, CORRECT?

25        A.        YES.

26        Q.        AND THOSE ACCOUNTS INCLUDE FRONTLINE

27   MEDICAL, GOLDEN STATE PHARMACEUTICALS, LOS ANGELES HEALTH

28   PARTNERS AND TWO OR THREE OTHERS, CORRECT?

1895

1    Q.        DID YOU NOTICE OVER THE COURSE OF TIME AN

2    ORGANIZATIONAL STRUCTURE WITH REGARD TO ALL THESE

3    ORGANIZATIONS AND PEOPLE ASSOCIATED WITH DR. UWAYDAH THAT

4    WERE RELATED TO THOSE ORGANIZATIONS?

5    A.        WELL, I NOTICED THAT, YOU KNOW,

6    DR. UWAYDAH WAS DOING MOST, IF NOT ALL, OF THE DECISION

7    MAKING BUT OTHER PEOPLE'S NAMES WERE APPEARING ON THE

8    DOCUMENTATION FOR OWNERSHIP.

9    Q.        OKAY.  AND DID YOU EVER HAVE CONVERSATIONS

10   WITH EITHER MUNIR UWAYDAH OR MARISA OR ANYBODY ABOUT THE

11   INTENT OF THAT FACT, THAT HIS NAME WAS ON IT?

12   A.        I CAME TO UNDERSTAND THAT HE HAD A

13   JUDGMENT AGAINST HIM FROM GENERAL ELECTRIC DATING YEARS

14   BACK THAT WAS A CASE THAT HE HAD A JUDGMENT AGAINST HIM IN

15   OHIO, AND HE WAS ESSENTIALLY HIDING OUT TRYING NOT TO PAY

16   THAT JUDGMENT.

17   Q.        OKAY.  AND YOU DISCUSSED THIS WITH HIM?

18   A.        I OVERHEARD DISCUSSIONS RELATED TO IT AND

19   WOULD NEED TO GET HIS SIGNATURE ON VARIOUS DOCUMENTS THAT

20   WERE COMING FROM ATTORNEYS THAT HE HAD TO SIGN RELATED TO

21   IT.

22   Q.        OKAY.  SO DID YOU COME TO UNDERSTAND --

23   WELL, LET ME SHOW YOU AT THIS POINT WHAT WE PREVIOUSLY

24   MARKED AS EXHIBIT 80, A TWO-PAGE DOCUMENT ON THE SCREEN TO

25   YOUR LEFT.

26           THE FIRST PAGE, WELL, THERE'S TWO PAGES.

27   THERE SEEMS TO BE 24 ACCOUNTS REFERENCED THAT ARE SHADED

28   IN BLUE.  I WANT TO FOCUS FOR A MOMENT ON THOSE ENTITIES.

1896

1      A.       OKAY.

2      Q.       DO YOU RECOGNIZE THE NAMES OF THE 24

3 ENTITIES THAT ARE LISTED IN EXHIBIT 80 WITH THE NUMBERS 1

4 THROUGH 24?

5      A.       I DO RECOGNIZE THE NAMES.  THERE ARE SOME

6 DUPLICATES BECAUSE SOME OF THE COMPANIES HAD ACCOUNTS AT

7 MULTIPLE BANKS.

8      Q.       OKAY.  SO LET ME GO THROUGH THIS REAL

9 QUICKLY WITH YOU.

10      A.       UH-HUH.

11      Q.       YOU TOLD US ABOUT FRONTLINE MEDICAL

12 ASSOCIATES, NO. 1.

13               NO. 2 IS GOLDEN STATE PHARMACEUTICAL.

14 WHAT IS THAT?

15      A.       IT'S A PHARMACY.

16      Q.       AND WHO OWNED THAT COMPANY?

17      A.       MARISA SCHERMBECK.

18      Q.       OKAY.  AND WHEN YOU SAY MARISA SCHERMBECK,

19 IS THAT WHOSE NAME --

20      A.       THAT'S THE NAME THAT APPEARED ON THE

21 FILINGS AS WELL AS THE APPLICATION FOR THE PHARMACY.

22      Q.       OKAY.

23      A.       MARISA SCHERMBECK AND MARISA NELSON, HER

24 MAIDEN NAME.

25      Q.       OKAY.  WITH REGARD TO ALL -- HAVE YOU

26 REVIEWED THAT DOCUMENT BEFORE?

27      A.       YES.

28      Q.       AND THE 24 ENTITIES THAT ARE LISTED IN

1897

```
 1    THIS DOCUMENT AND SHADED IN BLUE, DID YOU -- WHO WAS THE
 2    TRUE OWNER OF THOSE ENTITIES?
 3         A.      DR. UWAYDAH.
 4         Q.      AND DID HIS NAME APPEAR, OTHER THAN ON
 5    FRONTLINE MEDICAL AND SOUTH BAY SURGICAL, DID HIS NAME
 6    APPEAR ON ANY OF THESE ENTITIES?
 7         A.      NO, IT DID NOT.
 8         Q.      AND WAS THAT, ACCORDING TO YOUR EXPERIENCE
 9    WITH HIM AND THESE ORGANIZATIONS, WAS THAT INTENTIONAL?
10         A.      YES.
11         Q.      WHAT WAS THE PURPOSE OF HIM NOT HAVING HIS
12    NAME ON THAT?
13         A.      WELL, TO HIDE ASSETS FROM THE JUDGMENT AS
14    WELL AS TO MAKE SURE THAT THERE WAS NO, YOU KNOW, KIND OF,
15    UMM, UMM, CONFLICT OF INTEREST BETWEEN COMPANIES.
16         Q.      OKAY.  SO THERE ARE SOME COMPANIES THAT IF
17    HIS NAME APPEARED AS THE OWNER, HE WOULD -- THERE WOULD BE
18    REGULATIONS OR RULES THAT WOULD ULTIMATELY PROHIBIT THAT
19    EITHER OWNERSHIP OR RELATIONSHIP WITH OTHER ENTITIES; IS
20    THAT CORRECT?
21         A.      I'M NOT SURE ABOUT THAT, BUT I DEFINITELY
22    RECALL THAT THERE WERE INSURANCE COMPANIES INVESTIGATING
23    HIM IN FRONTLINE'S PRACTICES, SO THAT WAS SOMETHING THAT
24    WAS DISCUSSED OFTEN IN RELATION TO THE STRUCTURE OF THE
25    COMPANIES.
26         Q.      OKAY.  AND DISCUSSED WITH HIM AS WELL?
27         A.      YES.
28         Q.      AND LOS ANGELES HEALTH PARTNERS, WHAT IS
```

1919

1   UWAYDAH KNEW EACH OTHER.

2           A.      YES.

3           Q.      AND JEFF STEVENS, WAS THAT A NAME I THINK

4   MENTIONED?

5           A.      YES.

6           Q.      SO ALL THESE PEOPLE KNEW EACH OTHER,

7   CORRECT?

8           A.      YES.

9           Q.      AND THEY WERE ALL SUPPOSEDLY INDIVIDUAL

10  INVESTORS?

11          A.      RIGHT.

12          Q.      DO YOU KNOW WHERE THESE INDIVIDUAL

13  INVESTORS WERE GETTING THEIR MONEY FROM?

14          A.      I DON'T.

15          Q.      DO YOU KNOW WHO WAS GOING TO BE THE

16  CONTROLLER OF THIS GROUP OF INVESTORS?

17          A.      I WOULD ASSUME THAT DR. UWAYDAH WOULD HAVE

18  BEEN.

19          Q.      WAS HE SPEARHEADING THIS PROJECT OR WERE

20  THERE OTHERS?

21          A.      HE WAS SPEARHEADING IT.

22          Q.      DID DR. UWAYDAH HAVE AN INNER CIRCLE OF

23  PEOPLE THAT HE TRUSTED?

24          A.      YES.

25          Q.      AND WHO WAS IN THE INNER CIRCLE?

26          A.      TO MY KNOWLEDGE KELLY AND RONNIE AND

27  TATIANA, THE TURLEYS, MARISA, PETE, MYSELF, AND I WOULD

28  SAY, YOU KNOW, PROBABLY MOST OF THE PEOPLE ON THAT LIST,

1920

```
 1    YOU KNOW, JEFF STEVENS, MARK AOLI.
 2         Q.      OKAY.
 3         A.      OH, YES, AND WENDEE LUKE.
 4         Q.      OKAY.  SO WHEN -- I ASKED YOU ABOUT INNER
 5    CIRCLE.  WHAT DO YOU TAKE THAT TO MEAN WHEN YOU SAY YES TO
 6    THAT?  WHAT DOES THAT MEAN IN THE ROLE THAT YOU'RE
 7    DESCRIBING?
 8         A.      IT MEANS THAT IF PEOPLE HAD A QUESTION
 9    ABOUT SOMETHING, THEY WOULD GO TO THOSE PEOPLE, NOT
10    DIRECTLY TO DR. UWAYDAH.
11              AND IN THE OPERATION OF THE CLINICS OR ALL
12    THE VARIOUS COMPANIES, IF THOSE INDIVIDUALS WERE SAYING
13    SOMETHING, IT WAS UNDERSTOOD THAT THAT WAS COMING FROM
14    DR. UWAYDAH.
15         Q.      WAS LETTY LEMUS ALSO ONE OF THOSE PEOPLE
16    THAT WAS AROUND DR. UWAYDAH A LOT?
17         A.      YES.
18         Q.      OKAY.
19         A.      YES.
20         Q.      AND --
21         A.      I'M SORRY.  BUT THE CLINICS WERE RUN BY
22    PAUL AND MARIA, AND THEY SORT OF HAD THEIR OWN LIKE INNER
23    CIRCLE OF SPECIFIC PEOPLE LIKE LETTY THAT THEY WOULD TRUST
24    WITH THINGS AT THE CLINIC LEVEL.
25         Q.      OKAY.  NOW, I WANT TO ASK YOU A QUESTION,
26    YOU TOLD US ABOUT KELLY PARK.  WAS SHE CLOSE TO
27    DR. UWAYDAH?
28         A.      YES, VERY CLOSE.
```

# EXHIBIT 2

# Uwaydah

## List of Bank Accounts

| # | Account Name | Account Number | Bank Name | Period covering | Total Cash Out /Charges | | Total Cash In /Payments | Authorized Signer |
|---|---|---|---|---|---|---|---|---|
| 1 | Frontline Medical Associates Inc | 60150652111 | One West Bank/First Federal Bank | 6/7/06-6/30/10 | $ | 56,392,086.20 | 56,391,229.07 | Marisa Schermbeck, Shelly Rosdeitly |
| 2 | Golden State Pharmaceuticals LLC | 60160652897 | One West Bank/First Federal Bank | 4/23/07-6/30/10 | $ | 5,612,001.20 | 5,612,004.09 | Marisa Schermbeck |
| 3 | Los Angeles Health Partners Medical Group Inc | 60065601697 | One West Bank/First Federal Bank | 8/20/04-6/30/10 | $ | 4,065,655.89 | 4,066,044.38 | Marisa Schermbeck, Paul Turley, Clinton Rewerts |
| 4 | Accounts Receivable LTD Liability Company | 60165655734 | One West Bank/First Federal Bank | 3/20/08-6/30/10 | $ | 20,084,999.22 | 20,197,875.63 | Marisa Schermbeck, Shelly Rosdeitly |
| 5 | Marisa Schermbeck DBA Schermbeck Mgmt | 60270048150 | One West Bank/First Federal Bank | 6/7/06-6/30/10 | $ | 22,765,808.22 | 22,761,761.58 | Marisa Schermbeck |
| 6 | Stronghold Capital LLC | 60160652299 | One West Bank/First Federal Bank | 6/27/06-6/30/10 | $ | 1,867,620.73 | 1,867,123.07 | Marisa Schermbeck |
| 7 | Springboard LLC | 60160655692 | One West Bank/First Federal Bank | 2/9/08-6/30/10 | $ | 3,862,593.26 | 3,882,979.80 | Marisa Schermbeck, Nathalie Vasquez |
| 8 | California MRI & Diagnostics LLC | 60270059439 | One West Bank/First Federal Bank | 11/26/08-6/10/10 | $ | 1,959,147.24 | 1,965,153.90 | Jeffrey E Stevens, Marisa Schermbeck |
| 9 | Sentinel Health Medical Group Inc | 60065602018 | One West Bank/First Federal Bank | 6/7/06-6/30/10 | $ | 488,531.83 | 458,811.31 | Marisa Schermbeck |
| 10 | Greenline Medical Management LLC | 60060605045 | One West Bank/First Federal Bank | 6/7/06-6/30/10 (No Activites 9/1/2006-6/30/10) | $ | 13,877,481.65 | 13,675,530.69 | Marisa Schermbeck |
| 11 | Faston Pharmaceuticals LLC | 60160655866 | One West Bank/First Federal Bank | 6/6/08-6/30/10 | $ | 1,368,266.48 | 1,372,660.43 | Marisa Schermbeck, Jorge Lopez, Shelly Rosdeitly |
| 12 | Frontline Medical Associates Inc | 60165652457 | One West Bank/First Federal Bank | 11/17/06-6/30/10 | $ | 670,180.00 | 672,285.49 | Marisa Schermbeck |
| 13 | Glockner Group, LLC | 3411466093 | JP Morgan Chase/Washington Mutual | 5/5/09-6/30/10 | $ | 1,090,994.00 | 1,100,620.00 | Ronnie W Case |
| 14 | Golden State Pharmaceuticals, LLC | 844073122 | JP Morgan Chase/Washington Mutual | 12/3/09-7/6/10 | $ | 8,517,072.93 | 8,524,903.94 | Marisa E Schermbeck |
| 15 | Schermbeck Management | 844073114 | JP Morgan Chase/Washington Mutual | 12/18/09-7/6/10 | $ | 11,200,578.33 | 11,207,590.26 | Marisa Schermbeck |
| 16 | Springboard, LLC | 844073205 | JP Morgan Chase/Washington Mutual | 12/18/09-7/6/10 | $ | 345,692.54 | 345,043.59 | Marisa Schermbeck |
| 17 | Accounts Receivable LTD Liability Company | 22000392 | Ventura County Business Bank | 6/4/10-6/21/10 | $ | 336,510.96 | 523,778.89 | Marisa Schermbeck-Nelson |

EX 2-1

| # | Account Name | Account Number | Bank Name | Period covering | Total Cash Out /Charges | Total Cash In /Payments | Authorized Signer |
|---|---|---|---|---|---|---|---|
| 18 | Frontline Medical Associates Inc | 500287438 | Hanmi Bank | 11/20/09-6/30/10 | $ 8,997,621.02 | 9,134,184.28 | Paul Turley / Shelly Rosekelly |
| 19 | South Bay Surgical and Spine | 500287403 | Hanmi Bank | 11/20/09-6/29/10 | $ 1,354,877.90 | 1,380,537.07 | Shelly Rosekelly |
| 20 | Stronghold Capital, LLC | 500287411 | Hanmi Bank | 11/20/09-5/28/10 | $ 1,229,944.61 | 1,231,892.84 | Paul Turley / Shelly Rosekelly |
| 21 | California MRI Inc | 6034014377 | One West Bank/First Federal Bank | 3/18/10-6/16/10 | $ 298,323.57 | 386,188.17 | Jeffrey Stevens |
| 22 | Accounts Receivable Acquisitions LLC DBA Accounts Receivable Acquisition Associates | 6006060601689 | One West Bank/First Federal Bank | 6/7/06-6/30/10 | $ 13,210,942.04 | 13,148,711.27 | Marisa Schermbeck |
| 23 | Accounts Receivable LTD | 20005013 | Ventura County Business Bank | 12/14/09– 6/4/10 | $ 6,944,677.75 | 6,944,677.75 | Marisa Schermbeck-Nelson |
| 24 | Greenline Medical Management LLC | 50160652228 | One West Bank/First Federal Bank | 8/4/06-4/30/08 | $ 10,252.40 | 10,252.40 | Marisa Schermbeck |
| | | | | | $ 184,572,139.97 | $ 184,861,639.50 | |
| 25 | Kelly Park | 08308 11840 | Bank of America | 7/12/03-7/12/10 | $ 2,239,434.39 | 2,247,801.66 | Kelly Park |
| 26 | Peter W Nelson, Marisa Schermbeck-Nelson | 814-330529-6 | JP Morgan Chase/Washington Mutual | 1/13/04-6/9/10 | $ 2,481,158.91 | 2,483,171.20 | Peter W Nelson / Marisa Schermbeck |
| 27 | Jeffrey E Stevens, Mira Stevens | 09142 12976 | Bank of America | 5/18/06-5/17/13 | $ 5,496,170.94 | 5,492,864.28 | Jeffrey Stevens |
| 28 | Jeffrey E Stevens, Los Angeles Real Estate Group | 21629-660970 | Bank of America | 5/1/07-2/20/13 | $ 334,321.42 | 335,549.01 | Jeffrey Stevens |
| 29 | Jeffrey E and Mira Stevens | 09149-73551 | Bank of America | 6/10/09-5/17/13 | $ 9,900.00 | 13,210.50 | Jeffrey Stevens |
| 30 | Jeffrey E and Mira Stevens | 10813-41294 | Bank of America | 5/22/09-10/29/10 | $ 7,226.81 | 6,901.10 | Jeffrey Stevens |
| 31 | Controlled Health Management, Inc | 204762926 | Citibank | 8/20/012 10/7/13 | $ 7,580,729.64 | 7,580,729.64 | Tatiana Torres Arnold |
| 32 | Controlled Health Management, Inc / Firstline Health, Inc | 205376106 | Citibank | 8/27/13 10/31/14 | $ 17,576,608.16 | 17,955,008.01 | Tatiana Torres Arnold |
| 33 | Ventura Collections & Management (DBA) Golden State Pharmaceuticals | 14199920 | Farmers & Merchant | 7/2/10-8/13/1 | $ 1,664,783.31 | 1,873,686.79 | Terrell Webster Luke |
| 34 | Ventura Collections & Management (DBA) Frontline Medical Associates | 14205313 | Farmers & Merchant | 6/1/11–7/29/12 | $ 1,573,304.21 | 1,091,592.58 | Terrell Webster Luke |
| 35 | First Health Inc US Health & Orthopedic | 14202107 | Farmers & Merchant | 12/6/11-12/8/12 | $ 981,529.11 | 1,515,386.20 | Terrell Webster Luke |
| 36 | TLC Home Finance | 14199939 | Farmers & Merchant | 10/19/10-12/20/11 | $ 7,310.00 | 7,310.04 | Terrell Webster Luke |
| 37 | TLC Jackson Hewitt Tax Service | 14200295 | Farmers & Merchant | 11/10-3/24/11 | $ 3,300.00 | 3,300.00 | Terrell Webster Luke |
| 38 | Frontline Medical Associates | 14202093 | Farmers & Merchant | 12/11-7/26/12 | $ 372,559.71 | 302,559.11 | Terrell Webster Luke |
| | | | | | $ 224,900,476.62 | $ 225,770,709.62 | |

EX 0-2

Pag 1

# EXHIBIT 3

THE GRAND JURY OF THE COUNTY OF LOS ANGELES

STATE OF CALIFORNIA

THE PEOPLE OF THE STATE OF CALIFORNIA, )
                                       )
                          PLAINTIFF,   )
                                       )
            VS.                        )   NO. BA435339
                                       )
TATIANA TORRES ARNOLD,                 )
TERRY LUKE,                            )
TONY FOLGAR,                           )
YOLANDA GROSCOST,                      )
                                       )
                          DEFENDANTS.  )
_____)

REPORTER'S TRANSCRIPT OF GRAND JURY PROCEEDINGS

AUGUST 17, 2015

APPEARANCES:

    DAYAN MATHAI, KAREN NISHITA, KENNES MA,
    CATHERINE CHON, DEPUTIES DISTRICT ATTORNEY
    OF THE COUNTY OF LOS ANGELES, REPRESENTING THE
    OFFICE OF THE DISTRICT ATTORNEY.

    VALERIE AENLLE-ROCHA, DEPUTY DISTRICT ATTORNEY
    OF LOS ANGELES COUNTY AND LOS ANGELES COUNTY
    GRAND JURY ADVISOR.

    JEANNE C. IANNONE, CSR #3140, DULY APPOINTED
    AND SWORN AS THE OFFICIAL STENOGRAPHIC REPORTER
    OF THE LOS ANGELES COUNTY GRAND JURY.

VOLUME 1 OF 6                  JEANNE C. IANNONE, CSR #3140
PAGES 1 THROUGH 145            OFFICIAL REPORTER

COPY

636

1  UWAYDAH TO BE HIS PERSONAL ASSISTANT?

2          A.      YES.

3          Q.      AND YOU WERE MENTIONING YESTERDAY KIND OF

4  SOME OF THE DYNAMIC THAT EXISTED, THAT YOU DISCOVERED

5  EXISTED IN THE ORGANIZATION THAT YOU WERE WORKING WITH

6  WHICH WAS MAINLY FRONTLINE MEDICAL; IS THAT CORRECT?

7          A.      CORRECT.

8          Q.      AND I THINK ONE OF THE MAIN -- ONE OF THE

9  THINGS YOU SAID YESTERDAY WAS THAT DR. UWAYDAH WAS

10 INVOLVED VERY INTRICATELY IN A LOT OF THE DECISION MAKING

11 BUT THAT HE DIDN'T WANT HIS NAME ON A LOT OF THE

12 ORGANIZATIONS, AND WOULD THAT INCLUDE BANK ACCOUNTS?

13         A.      YES.

14         Q.      AND DID HE HAVE A LOT OF BANK ACCOUNTS?

15         A.      NO, NOT THAT I'M AWARE OF.

16         Q.      IN HIS NAME, ARE YOU SAYING?

17         A.      YES.

18         Q.      OKAY.  WHAT ABOUT -- DID HE HAVE BANK

19 ACCOUNTS THAT HE CONTROLLED THAT WERE NOT IN HIS NAME?

20         A.      YES.  ALL OF THE CORPORATE ACCOUNTS WERE

21 CONTROLLED BY LLC MANAGERS OR OFFICERS OF VARIOUS

22 COMPANIES THAT HAD BEEN PUT ON THE PAPERWORK SPECIFICALLY

23 SO THAT THEY COULD OPERATE THOSE BANK ACCOUNTS AT HIS

24 DIRECTION.

25         Q.      OKAY.  AND WAS IT EVER DISCUSSED WITH YOU

26 BY DR. UWAYDAH AS TO WHY -- WELL, LET ME ASK YOU FIRST:

27 WAS YOUR NAME PUT ON BANK ACCOUNTS?

28         A.      A FEW, YES.

637

1       Q.      OKAY.  AND DID YOU EVER DISCUSS -- AND
2   WERE YOU AWARE OF OTHER PEOPLE THAT WERE ON OTHER BANK
3   ACCOUNTS?
4       A.      YES.  MOST OF THE ACCOUNTS WERE CONTROLLED
5   BY MARISA SCHERMBECK AND I BELIEVE ALL OF THE ACCOUNTS
6   THAT I WAS ON SHE WAS ON AS WELL.
7       Q.      OKAY.  NOW, DID DR. UWAYDAH EVER DISCUSS
8   WITH YOU WHY HE OWNED THE COMPANY AND HE WAS DIRECTING THE
9   COMPANY AND HE -- IT WAS HIS MONEY, WHY YOUR NAME SHOULD
10  BE ON THE ACCOUNT BUT HIS WAS NOT?
11      A.      WELL, AT FIRST IT JUST SEEMED TO SORT OF
12  LIKE IT WAS A CLERICAL THING THAT HE DIDN'T WANT TO BE
13  BOTHERED WITH SO HE JUST WANTED TO SEND HIS ASSISTANTS TO
14  TAKE CARE OF BANKING ISSUES.  BUT I LATER LEARNED THAT HE
15  ALSO HAD A JUDGMENT AGAINST HIM BY GENERAL ELECTRIC FOR A
16  BUSINESS DEAL GONE WRONG MANY YEARS BEFORE THAT HE WAS
17  BASICALLY TRYING TO AVOID PAYING.
18      Q.      OKAY.  DID YOU DISCUSS THOSE WITH
19  DR. UWAYDAH?
20      A.      YES.
21      Q.      OKAY.  AND WAS THAT HIS EXPLANATION TO YOU
22  AS TO WHY HE WANTED YOUR NAME ON HIS ACCOUNT?
23      A.      WELL, MOSTLY JUST SO THAT I COULD GO TO
24  THE BANK AND DEPOSIT CHECKS AND WRITE CHECKS FOR ACCOUNTS
25  PAYABLE, THAT'S WHAT I WAS TOLD.
26      Q.      OKAY.  NOW, HOW MANY YEARS TOTAL WOULD YOU
27  SAY YOU WORKED FOR DR. UWAYDAH?
28      A.      I THINK IT WAS A LITTLE LESS THAN FIVE.

649

1          DO YOU RECOGNIZE THE NAMES OF THOSE
2   COMPANIES?
3          A.      I DO.
4          Q.      OKAY.  AND HOW DO YOU RECOGNIZE THOSE?
5          A.      COMPANIES CONTROLLED BY DR. UWAYDAH.
6          Q.      OKAY.  AND DOES THAT INCLUDE, FOR EXAMPLE,
7   THE COMPANY CALLED ACCOUNTS RECEIVABLE?
8          A.      YES.
9          Q.      AND WOULD THAT INCLUDE SCHERMBECK
10  MANAGEMENT?
11         A.      YES.
12         Q.      OKAY.  AND THESE WERE ALL -- ALL OF THESE
13  COMPANIES IN THE BLUE SHADING WERE VARIOUS COMPANIES THAT,
14  OR BANK ACCOUNTS ACTUALLY FOR COMPANIES THAT WERE IN THE
15  MANNER YOU DESCRIBED BEFORE CONTROLLED BY DR. UWAYDAH,
16  CORRECT?
17         A.      CORRECT.
18         Q.      SO ALTHOUGH BASED ON YOUR EXPERIENCE, FOR
19  EXAMPLE, LOOKING AT NO. 19, YOU WERE THE AUTHORIZED SIGNER
20  OF SOUTH BAY SURGICAL AND SPINE ACCOUNT, CORRECT?
21         A.      CORRECT.
22         Q.      WOULD YOU -- AND THAT ACCOUNT, ACCORDING
23  TO THIS EXHIBIT HAS, YOU KNOW, OVER A MILLION DOLLARS IN
24  IT.  IS THAT -- WAS ANY OF THAT YOUR MONEY?
25         A.      NO.
26         Q.      WAS IT ANYBODY ELSE'S MONEY OTHER THAN
27  DR. UWAYDAH?
28         A.      NO.

651

1      A.      I WAS ASKED TO GET CASH AND GIVE IT TO

2  MARISA OR GIVE IT TO KELLY OR GIVE IT TO DR. UWAYDAH,

3  DR. TURLEY.

4      Q.      OKAY.  SO YOU WERE NEVER ASKED TO GIVE IT

5  AS PAYMENT TO A LAWYER DIRECTLY OR TO A MARKETER BUT YOU

6  WERE ASKED TO GIVE MONEY TO SOMEBODY ELSE IN THE

7  ORGANIZATION, AND YOU CAME TO UNDERSTAND IT WAS FOR THAT

8  PURPOSE?

9      A.      YES.

10     Q.      OKAY.

11     A.      I CAN'T SAY IT WAS TOTALLY FOR THAT

12  PURPOSE, BUT THAT WAS THE MAIN PURPOSE, YES.

13     Q.      OKAY.  NOW, I WANT TO SHOW YOU -- DID ALL

14  OF THOSE ORGANIZATIONS, COMPANIES THAT I SHOWED YOU ON

15  THAT LAST EXHIBIT, DID YOU EVER TALK TO DR. UWAYDAH ABOUT

16  WHY HE HAD SO MANY DIFFERENT ORGANIZATIONS OR ASPECTS OF

17  THESE COMPANIES?

18     A.      I CAME TO UNDERSTAND THAT ANY TIME HE HAD

19  A NEW VENTURE, HE ALWAYS CREATED A NEW COMPANY.  WHY THAT

20  WAS I DON'T REALLY KNOW, BUT HE ALWAYS WANTED TO KNOW LIKE

21  WHAT EACH INDIVIDUAL COMPANY, HOW PROFITABLE THEY WERE,

22  AND THEN IN SOME WAYS I THINK THAT CREATING ALL THESE

23  INDIVIDUAL COMPANIES WAS PART OF THAT.

24     Q.      OKAY.  NOW, DID HE EVER TELL YOU WHY HE

25  WANTED TO CREATE COMPANIES IN THE FORM OF LIMITED

26  LIABILITY COMPANIES OR LLCS?

27     A.      WELL, I CAME TO UNDERSTAND THAT WHEN YOU

28  FORM AN LLC, YOU HAVE TO SAY WHEN YOU CREATE IT WHO THE

652

1   OWNER IS IN ORDER TO GET A TAX I.D., BUT THEN ON THE
2   SECRETARY OF STATE FILINGS, WHICH ARE PUBLIC FILINGS, YOU
3   LIST MANAGER, A MANAGER, MAYBE SOME OFFICERS THAT ARE NOT
4   OWNERS, SO IT'S EASIER TO KIND OF OBFUSCATE WHO IS BEHIND,
5   YOU KNOW, AN ORGANIZATION.  THAT WAY BECAUSE PEOPLE OFTEN
6   ARE REQUESTING YOUR SECRETARY OF STATE FILINGS AND NOT
7   LIKE REQUESTING THROUGH THE IRS WHO THE OWNER IS.
8          Q.       OKAY.
9          A.       AND IT WAS ALSO VERY FAST TO CREATE AN
10  LLC.  YOU COULD CREATE THE FILING AND IT WAS DONE AND THEN
11  YOU HAD TO DO PAPERWORK.  I THINK CORPORATIONS WERE MORE
12  TIME CONSUMING AND THERE WAS MORE PUBLIC INFORMATION
13  AVAILABLE.
14         Q.       SO IT WAS CLEAR TO YOU IN YOUR TIME
15  WORKING THERE THAT THESE -- THERE WAS A PURPOSE BEHIND
16  WHAT WAS HAPPENING FROM THE FILING, SECRETARY OF STATE
17  FILING?
18         A.       YES.  AND HE DID HAVE ATTORNEYS ADVISING
19  HIM ON HOW TO CREATE DIFFERENT ENTITIES AS WELL.
20         Q.       OKAY.  AND WAS ONE OF THOSE ATTORNEYS
21  TATIANA ARNOLD?
22         A.       IT WAS.
23         Q.       DID YOU EVER PARTICIPATE IN ANY
24  CONVERSATIONS WITH TATIANA ARNOLD AND DR. UWAYDAH ABOUT
25  THIS VERY IDEA OF WHAT YOU'RE DESCRIBING, HOW TO OBSCURE
26  OR OBFUSCATE HIS OWNERSHIP OF COMPANIES?
27         A.       YES.
28         Q.       CAN YOU TELL US ABOUT THAT.

654

1　AND SO MUCH HAS HAPPENED.  BUT I FEEL LIKE IT WAS AROUND

2　2008 SHE HAD BEEN THERE AROUND TWO YEARS BEFORE I LEFT,

3　BUT I'M NOT POSITIVE.

4　　　　Q.　　OKAY.  AND --

5　　　　A.　　HE HAD MANY MANY MANY ATTORNEYS AND BEFORE

6　THEN AND ALSO WHILE SHE WAS STILL WITH HIM.

7　　　　Q.　　OKAY.  SO EVEN THOUGH SHE WAS KIND OF

8　THERE AS HIS OWN ATTORNEY AND VERY INVOLVED WITH THE

9　ORGANIZATIONS, HE HAD A LOT OF OTHER ATTORNEYS?

10　　　　A.　　YES.  HE WOULD HAVE SPECIALIST ATTORNEYS

11　FOR PHARMACEUTICAL ISSUES, SURGICAL ISSUES, AND IN SOME

12　WAYS TATIANA'S JOB ALSO WAS TO MANAGE ALL OF THESE OTHER

13　ATTORNEYS.

14　　　　Q.　　OKAY.  NOW, THESE -- YOU SAID EARLIER THAT

15　DR. UWAYDAH HAD A JUDGMENT AGAINST HIM, CORRECT?

16　　　　A.　　CORRECT.

17　　　　Q.　　AND DID YOU DISCUSS THAT WITH HIM OR DID

18　YOU HEAR THAT BEING DISCUSSED?

19　　　　A.　　I HEARD IT BEING DISCUSSED, YES, BECAUSE

20　IT WAS WHY HE DIDN'T HAVE, YOU KNOW, BANK ACCOUNTS.  I

21　THINK HE MAY HAVE ACTUALLY HAD ONE BANK ACCOUNT BASICALLY

22　FOR SHOW, TO SHOW THAT HE DIDN'T HAVE ANY MONEY.

23　　　　Q.　　OKAY.  AND WAS -- EXPLAIN THAT TO ME.  WAS

24　IT DISCUSSED HOW THAT WOULD HELP HIM?

25　　　　A.　　HE HAD TO GO INTO DEPOSITIONS AND DEBTORS

26　EXAMS, AND THE GENERAL ELECTRIC WAS CONSTANTLY

27　SUBPOENAING, I DON'T KNOW IF IT WAS LIKE EVERY YEAR OR

28　SOMETHING HE HAD TO DISCLOSE INCOME OR HOW EXACTLY THAT

657

1   THAT THERE WAS ALSO A TIME WHERE TATIANA ORGANIZED WITH

2   DR. UWAYDAH TO ATTEND A MEETING WITH ANOTHER SET OF

3   ATTORNEYS WHO WERE SUPPOSED TO BE SORT OF SPECIALISTS IN

4   THIS AREA OF LAW, AND THEY HAD, THEY TOOK, YOU KNOW, THE

5   SPREADSHEET OF WHO WAS ON WHAT PAPERWORK AND THIS OTHER

6   ATTORNEY GROUP WAS SUPPOSED TO HELP WITH THE

7   REORGANIZATION AND I KNOW THAT THEY PULLED OUT OF THAT

8   BECAUSE THEY DID NOT FEEL COMFORTABLE, THAT ATTORNEY

9   GROUP.

10          Q.      THE OTHER ATTORNEY GROUP?

11          A.      YEAH.

12          Q.      WHAT -- YOU DESCRIBED EARLIER THAT YOU

13  CAME TO UNDERSTAND OR IT BECAME CLEAR TO YOU BASED ON YOUR

14  EXPERIENCE THAT THE WAY THESE THINGS WERE ORGANIZED AND

15  SET UP WITH THE PUBLIC DOCUMENTS WAS TO AVOID DETECTION OF

16  DR. UWAYDAH'S OWNERSHIP AND AN EFFORT TO AVOID HAVING TO

17  PAY A JUDGMENT OR ANSWER QUESTIONS A CERTAIN WAY IN

18  DEPOSITIONS; IS THAT CORRECT?

19          A.      YES.

20          Q.      OKAY.  IS THAT BASED ON CONVERSATIONS THAT

21  YOU DESCRIBED TO US?

22          A.      YES.

23          Q.      OKAY.  AND WHO WAS INVOLVED IN THOSE

24  CONVERSATIONS?

25          A.      MARISA AND TATIANA AND SOMETIMES DIFFERENT

26  ATTORNEYS.  RICHARD CRANE WAS THE ATTORNEY, I BELIEVE, WHO

27  WAS HANDLING THE JUDGMENT AND THE COMMUNICATIONS WITH THEM

28  ABOUT DR. UWAYDAH'S SALARY AND THAT KIND OF THING.

658

1      Q.      OKAY.  AND DID -- DID YOU EVER HEAR

2  SPECIFICALLY TATIANA GIVE ANY DIRECTION TO YOURSELF OR TO

3  DR. UWAYDAH ABOUT CHANGING NAMES OR DOING ANYTHING TO HIDE

4  THE TRUE OWNERSHIP OF THE COMPANY?

5      A.      THEY DEFINITELY WERE SORT OF, YOU KNOW,

6  BOUNCING IDEAS OFF OF EACH OTHER AND BRAINSTORMING

7  TOGETHER.  IT WASN'T JUST A CASE OF HIM TELLING HER WHAT

8  TO DO, SHE SEEMED TO BE PARTICIPATING AND FIGURING OUT HOW

9  TO ACCOMPLISH WHATEVER THEIR GOAL WAS.

10     Q.      OKAY.  NOW, DID YOU EVER -- LET ME SHOW

11 YOU THIS IS EXHIBIT -- EXHIBIT 28-1, AND WE'RE GOING TO

12 START PAGE 1.  HAVE YOU SEEN THIS EXHIBIT BEFORE?

13     A.      YES.

14     Q.      OKAY.  AND I JUST WANT YOU TO -- I'M JUST

15 GOING TO GO THROUGH WITH THE LASER POINTER, AND IF YOU

16 NEED TO USE A LASER POINTER, YOU CAN.

17             I'M GOING TO START WITH THE -- I'M JUST

18 GOING TO KIND OF SCROLL THROUGH THIS AS QUICKLY AS I CAN

19 TO ASK YOU ABOUT CERTAIN NAMES AND CERTAIN PLACES, OKAY?

20             5007 HOLDINGS, ARE YOU FAMILIAR WITH THAT

21 COMPANY?

22     A.      I AM NOT.  THAT WAS FORMED AFTER I LEFT.

23     Q.      OKAY.  AND ARE YOU FAMILIAR WITH THE

24 ADDRESS OF THAT HOLDING COMPANY, 16601 VENTURA BOULEVARD?

25     A.      I BELIEVE THAT THAT'S TATIANA'S LAW OFFICE

26 AND 5007 WAS THE ADDRESS ON OCEAN FRONT WALK OF THE

27 RESIDENCE THAT DR. UWAYDAH LIVED AT.

28     Q.      SO 5007 HAD SOME SIGNIFICANCE?

665

1  COMPANIES, DID HE EVER SPEAK SPECIFICALLY ABOUT ANY

2  INSURANCE LIKE BILLING COMPANIES?

3       A.      NO.  LIKE STATE COMPENSATION INSURANCE

4  FUND WAS A BIG ONE.  HE HAD -- THERE HAD BEEN VARIOUS

5  INSURANCE COMPANIES WHO HAD INVESTIGATED FRONTLINE AND

6  INVESTIGATED HIM SPECIFICALLY AND HIS PRACTICES, SO HE WAS

7  ALWAYS TRYING TO STAY KIND OF A STEP AHEAD OF THEM AND

8  MAKE SURE THAT THE BILLING WOULD GO THROUGH.

9       Q.      OKAY.  AND AGAIN ARE THESE THINGS YOU

10 HEARD IN THE MEETINGS THAT YOU ATTENDED?

11      A.      YES.

12      Q.      AND WOULD TATIANA BE AT SOME OF THESE

13 MEETINGS?

14      A.      YES, ABSOLUTELY.

15      Q.      SO SPECIFICALLY WHEN IT CAME TO THAT LAST

16 PIECE OF INFORMATION THAT YOU TOLD US, THAT YOU SAID

17 DR. UWAYDAH WOULD SAY THAT INSURANCE COMPANIES WERE AFTER

18 HIM, THEY DIDN'T WANT TO PAY AND THAT'S WHY HE WANTED

19 DIFFERENT NAMES ON, FOR EXAMPLE, GOLDEN STATE

20 PHARMACEUTICAL, WAS TATIANA PRESENT FOR THAT?

21      A.      OH, YEAH, SHE ABSOLUTELY KNEW ALL OF THESE

22 THINGS AND THAT HE WAS CONTROLLING AND ALL.

23      Q.      OKAY.  GOING DOWN, LOS ANGELES HEALTH

24 PARTNERS, DO YOU RECOGNIZE THAT NAME?

25      A.      I DO.  IT WASN'T VERY ACTIVE.  I DON'T

26 REALLY KNOW IF THEY WERE DOING ANYTHING OTHER THAN BILL

27 COLLECTING ON BILLS THEY HAD SENT OUT.

28      Q.      OKAY.  DO YOU RECOGNIZE GR MEDICAL?

701

1    BUT HAD OTHER PEOPLE'S NAMES ON IT, CORRECT?

2         A.       CORRECT.

3         Q.       AND IN LOOKING AT THE BANK RECORDS FOR

4    THOSE COMPANIES, THERE APPEARS TO HAVE BEEN LARGE AMOUNTS

5    OF MONEY IN EACH COMPANY.

6             FOR EXAMPLE, GOLDEN STATE PHARMACEUTICAL

7    AND FRONTLINE, AND THERE ARE ALWAYS -- IT ALWAYS APPEARED

8    THAT THERE WAS ALWAYS MONEY COMING IN AND THEN LARGE SUMS

9    OF MONEY ALWAYS GOING OUT.  SO THE FLUX OF MONEY WAS

10   ALWAYS IN AND OUT, IN AND OUT?

11        A.       YES.

12        Q.       ARE YOU FAMILIAR WITH WHAT WAS GOING ON

13   WITH THOSE COMPANIES AND THE MONEY?

14        A.       WELL, YES.  DR. UWAYDAH AND MARISA WOULD

15   HAVE AT LEAST WEEKLY IF NOT MORE OFTEN CONVERSATIONS ABOUT

16   HOW MUCH MONEY WAS IN WHAT ACCOUNT AND WHAT ACCOUNTS

17   NEEDED INFLUX OF CASH AND WHAT AMOUNTS IT NEEDED TO BE

18   TRANSFERRED OUT, AND IT SEEMED TO ME THAT --

19        Q.       I'M GOING TO STOP YOU THERE.

20        A.       OKAY.

21        Q.       HOW ARE YOU AWARE OF THESE MEETINGS THAT

22   THOSE TWO WERE HAVING?  WERE YOU PART OF THE MEETINGS OR

23   WERE YOU -- DID YOU OVERHEAR THE CONVERSATION?

24        A.       I WOULD BE IN THE SAME ROOM OFTEN, AND IF

25   NOT IN THE SAME ROOM WHEN I WAS IN WORKING IN MARISA'S

26   OFFICE, I WOULD HEAR HER HAVING THOSE CONVERSATIONS.

27        Q.       AND HOW --

28        A.       BUT SOMETIMES IN THE SAME ROOM.

1      Q.      YOU STATED THESE WERE ALMOST WEEKLY

2  MEETINGS THEY WOULD HAVE?

3      A.      YES, IF NOT MORE OFTEN.

4      Q.      WHERE WERE THESE MEETINGS TAKING PLACE?

5      A.      SOMETIMES IT WAS JUST BY PHONE.  HE WOULD

6  JUST CALL IN AND THEY WOULD HAVE A CONVERSATION, AND OTHER

7  TIMES IT WAS AT THESE BIG, YOU KNOW, MEETINGS --

8      Q.      AND --

9      A.      -- AT MISSION OR SOUTH BAY.

10     Q.      OKAY.  AND WHEN YOU'RE TALKING ABOUT THE

11  PHONE, IS IT FROM MARISA'S SIDE OF THE CONVERSATION THAT

12  YOU ARE ABLE TO HEAR WHAT WAS GOING ON?

13     A.      YES.  AND THEN, YOU KNOW, SHE WOULD ALSO

14  BE DOING, YOU KNOW, THE TRANSFERS AND I WOULD BE THERE

15  AND, YOU KNOW, PREPARING WIRE, WIRES AND OCCASIONALLY I'D

16  BE ASKED TO FAX THOSE WIRES.

17     Q.      AND THIS IS MONEY BEING MOVED FROM ONE

18  UWAYDAH COMPANY TO ANOTHER UWAYDAH COMPANY MOST OF THE

19  TIME; IS THAT FAIR TO SAY?

20     A.      WELL, NOT REALLY.

21     Q.      OKAY.

22     A.      BECAUSE HE ONLY WOULD MOVE MONEY BETWEEN

23  AFFILIATED COMPANIES, SO LIKE FRONTLINE AND SOUTH BAY

24  COULD MOVE MONEY IN BETWEEN ONE ANOTHER, BUT EVERYTHING

25  ELSE WOULD GO INTO MARISA'S MANAGEMENT ACCOUNT AND THEN GO

26  FROM THERE TO WHEREVER ELSE IT WAS SUPPOSED TO GO.

27     Q.      SO WHY WAS THAT DONE?

28     A.      BECAUSE THE COMPANIES WERE NOT AFFILIATED

703

1   AND SOME OF THEM IT WOULD NOT HAVE BEEN PROPER FOR THEM TO

2   BE AFFILIATED SUCH AS FRONTLINE, FOR EXAMPLE, AND GOLDEN

3   STATE PHARMACEUTICALS, SO ONE OR THE OTHER CAN'T BE

4   TRANSFERRING MONEY BECAUSE THAT WOULD BE AN OBVIOUS

5   TRACEABLE KICKBACK.   I MEAN IT COULD BE WHEN YOU DO THAT.

6         Q.         AND HOW ARE YOU AWARE THAT THAT'S -- THAT

7   WAS THE REASON WHY THEY WERE USING MARISA'S COMPANY TO

8   FUND MONEY TO OTHER UWAYDAH COMPANIES THAT -- TO AVOID --

9         A.         I WOULD HEAR THE CONVERSATIONS, YOU KNOW,

10  SAYING THAT FRONTLINE CAN'T SEND MONEY HERE OR THIS MONEY

11  CAN'T SEND IT THERE, BUT GET IT THERE, SO SEND IT TO

12  SCHERMBECK MANAGEMENT AND THEN SEND IT TO THAT COMPANY, OR

13  MORE OFTEN, YOU KNOW, TO LEBANON OR WHEREVER ELSE HE WAS

14  WIRING MONEY.

15        Q.         AND THESE ARE CONVERSATIONS THAT YOU

16  EITHER DIRECTLY HEARD BETWEEN UWAYDAH AND MARISA OR YOU

17  HEARD MARISA HAVING CONVERSATIONS WITH UWAYDAH ON THE

18  PHONE AND THEREFORE SEEING HER ACT AFTER THE

19  CONVERSATION --

20        A.         YES.

21        Q.         -- IS THAT CORRECT?

22        A.         BECAUSE SHE NEVER ACT -- SHE NEVER WAS

23  TRANSFERRING ANYTHING WITHOUT HIS SPECIFIC DIRECTION.

24        Q.         AND FROM YOUR KNOWLEDGE, THAT IS YOUR

25  PERSONAL KNOWLEDGE FROM DEALING WITH UWAYDAH AND MARISA,

26  YOUR UNDERSTANDING WAS IT WAS BECAUSE THESE WERE ACTUALLY

27  HIS COMPANIES, CORRECT?

28        A.         CORRECT.

# EXHIBIT 4

1

RECORDED INTERVIEW OF SHELLY ROSE KELLY CONDUCTED BY DAI TIM MCCRILLIS, DDA DAYAN MATHAI, DDA CYNTHIA NAKAO, DDA KAREN NISHITA, HEAD DEPUTY JOHN NANTROUP.


CASE NO.:            2010-F-2097
CASE NAME:          Investigation of Munir Uwaydah
CHARGE:             550PC
RECORDING DATE:     August 8, 2014
RECORDING TIME:     Unknown
RECORDING NO.:      DS400086, DS400087, DS400088
DEPUTY D.A.:        Cynthia Nakao
D.A. UNIT:          Healthcare Fraud Division


LEGEND:

T – DAI McCrillis
M – DDA Mathai
N – DDA Nakao
S – DDA Nishita
J – Head Deputy Nantroup
K – Shelly Rose Kelly
U  – Unidentified Voice
\*\*\*  – Unintelligible


Transcribed By:
Michelle Killen


TRANSCRIPT PROVIDED BY

Los Angeles County District Attorney's Office

September 2014


Ubiqus/2014

| Case No | Date of Report | Page |
|---|---|---|
| 2010-F-2096 | 09/21/2015 | 5 of 93 |

2

1       N     He was doing all this litigation against Marisa, myself, and

2    everybody else who's ever worked with him, basically.

3       M     What was the subject of the civil litigation that you – that's

4    really affected your life?

5       K     The civil litigation against me, they claimed that I, uh, as an

6    employee of Marisa, which I never was, um, helped her to embezzle

7    funds from South Bay Surgical.  And I had to settle that case because

8    they were falsifying documents and threatening me, threatening to sue

9    me by like, every company that he was affiliated with.  And I didn't have

10   the capacity to defend myself.  I'm sorry I'm getting upset.

11      M     That's okay.

12      K     But it brings up a lot of stuff.

13      M     I know.  We understand.

14      K     That has never –

15      M     That was a few years ago, and he, and he's –

16      K     That just settled, maybe a year ago.

17      M     Okay.

18      K     And the only reason why I settled was because they agreed

19    to, um, uh, sign an, an agreement that, uh, *** the companies, like a hold

20    harmless agreement, basically, that ,that he wouldn't sue, he would stop

21    suing me, because that was like the third –

22      M     Did he?

23      K      – the third lawsuit.

24      M     Okay.  And he would stop suing you *** get, uh –

25      K     He, uh, got a settlement of, um, he – well I had to sign an

26    agreement, saying like, that I did those things.  That wasn't true, and I

27    had to, um, which of course they can then use that against me as a

28    witness in any other proceedings.

3

1    M    Yeah, but who is representing you now?

2    K    Um, uh, it was originally, um, Ryan Saba, but we couldn't

3    continue to pay the bills.  And then, um, Steven Ball – I was transferred

4    to Steven Ball who, um, uh, basically helped me to settle it pro bono.  I

5    didn't – I mean, I didn't have any other choice.

6    M    Okay.

7    N    I'm so sorry.

8    K    And I called the DA's office when it was going on, because

9    originally Alan Jackson, when I gave my testimony, I said, "He's going to

10    sue me," basically.  He'll, he'll make something up and sue me until I am

11    in bankruptcy or worse.  And that's how they intimidate people.

12    M    Who negotiated the settlement for you?

13    K    Steven Ball.

14    M    Steven Ball?  Okay.

15    K    Yeah, and the attorney, uh, um, uh –

16    M    Okay.

17    K    It was basic.  It was a situation of, "You can settle or we can

18    fight – you can cash out your retirement and we can try to fight it, and

19    you still might lose because they're willing – they have people who are

20    willing to lie for them.  And, and, um, you know, they just keep making

21    company, company, company, company, and they were succeeding,

22    unfortunately, in civil court in, in prosecuting people because of that.  So

23    when that happened, like I did call the DA's office to say, you know –

24    M    This is what's going on.

25    K    This is what's going on, and I, I am about to sign this

26    agreement because I don't have any other choice.  And it could have –

27    affects your investigation *** and –

28    M    Do you remember who you talked to?

| Case No | Date of Report | Page |
|---------|---------------|------|
| 2010-F-2096 | 09/21/2015 | 7 of 93 |

21

1      **M**    – and others.  And you were present when Uwaydah gave

2  some kind of response, and it was always in that vein.

3      **K**    Yeah, yeah.

4      **M**    Um –

5      **K**    Because I mean, uh, there were like, all these attorneys, and

6  you know, he'd be, you know, working on a response.  Then he'd like,

7  have me like, print out the stuff so he could review it, and talk to the

8  attorneys, and stuff like that.

9      **M**    Okay.  Um, in the, the proffer that you gave with Alan

10  Jackson, there was a particular section where you talked about patients,

11  and you talked about, um, some generally and maybe one or two

12  specifically.  Um, there is one section where you – let me just *** do you

13  guys have any questions?  Let me grab this section.

14      **N**    Was Dr. Uwaydah dressed in scrubs during these meetings?

15      **K**    Mm-hmm.  Always in scrubs.

16      **N**    So he was always dressed in –

17      **K**    Mm-hmm.

18      **N**    He was never in a suit?

19      **K**    No, always in scrubs.

20      **N**    And then with respect to the message that you – who did

21  you – when you got the subpoena, did you call anybody?

22      **K**    Um –

23      **N**    ***.

24      **K**    I called my former familial attorney.

25      **N**    Which is – who is that?

26      **K**    Uh, Robert Bernstein.

27      **N**    But what did you tell him?

28      **K**    I mean, I, I told him, um, that you know, I had received,

22

1   received a subpoena, and just to ask his advice, in terms of anything I

2   needed to know, because I had never been involved in a grand jury

3   before, just to see what to expect.

4       N      What did he tell you?

5       K      I mean, he just told me, you know, that's *** it's just a fact

6   finding mission, you know.  I mean he, he knows me.  And so he was

7   just like, you know, "Just be yourself and ***," you know.

8       N      Did he also discuss with you that it was like a secret

9   proceeding –

10      K      Yes, yes.

11      N       – that you weren't supposed to discuss with anybody?

12      K      Yeah.

13      N      Okay.

14      K      Yeah, yeah.  I didn't – yeah, and I, I, I did not.

15      N      And that was the –

16      K      I certainly – I, I cut ties with every single person affiliated

17  with this organization, so –

18      N      Did any – after you –

19      K      I haven't –

20      N      After you received the subpoena, did anybody else from the

21  organization call you?  Or did like, um, Schermbeck call you, or –

22      K      No.

23      N      Did somebody else try to call you?

24      K      No.

25      N      Did you receive any kind of missed phone calls that –

26      K      Yeah, yeah.

27      N      Did you recognize numbers?

28      K      No.

23

| | | |
|---|---|---|
| 1 | N | Or were they blocked numbers, or – |
| 2 | K | Some blocked, and yeah. |
| 3 | N | And then the message, um, did you – |
| 4 | K | The voicemail.  I have it, the voicemail. |
| 5 | N | Did any – do you want to hear it?  Can we hear it before – |
| 6 | M | ***. |
| 7 | K | ***.  Let's see.  Which one was it? |

(Recording) Uh, hi, Shelly.  This is Benjamin Gluck.  Sorry for calling so late in the evening, but I did want to get a message through to you.  Uh, I understand that a couple of other people, uh, who were once associated with the company I represent, uh, uh, have been asked to give some testimony.  And I wanted to let you know that under the California Labor Code, the company is required to and is willing to pay for independent counsel that would represent only you, or – if you do get such a call.  Um, I, uh, and, and, you know, the other employees have, have, uh, taken advantage of that and gotten their own lawyers just to represent their interests.  So I'm letting you know that, uh, the company is willing to do that if – I don't know if anyone has asked you to testify.  But if someone is, uh, or does, uh, uh, just give me a call at this number and, um, I, will, I will make the arrangement so you could, uh, have a defending counsel to represent you, at no expense to you.  Um, uh, if you, if you are able to, uh, if you can give a call back, uh, just to let me know that you got this message, uh, and uh, what you – whether you'd be willing or interested in doing this, uh, I'd appreciate it.  My number is ▓▓▓▓▓▓▓▓.  Thank you very much.

| | | |
|---|---|---|
| 26 | M | Did you ever respond to him? |
| 27 | K | No. |
| 28 | M | And that was just the other night? |

24

1    K    Yeah.

2    M    And –

3    K    That was the same –

4    M    So other than ***.

5    K    That was like the same night that I got the subpoena.

6    M    Is that after you talked to your lawyer?

7    K    Yeah.

8    M    About four hours later, you said.

9    K    Mm-hmm.

10    M    And have you talked to your –

11    K    But he's being sued by them, so there's no way that he

12    would have –

13    M    Yeah, you know the –

14    K    – given them a heads up.

15    M    But you haven't talked to your lawyer?

16    K    What's that?

17    M    You haven't talked to your lawyer, uh –

18    K    I don't –

19    M    – after that phone call?

20    K    Yeah, I don't have a lawyer at this time.

21    M    Okay.  I mean, Bob Bernstein, you didn't call him back after

22    that?

23    K    After the –

24    M    After that phone call.

25    K    That, that phone call?

26    M    This phone call that we just heard, did you?

27    K    Yeah, I did.  And I – you know, I just said like, "How would

28    they," you know, I said, "First of all, how would they know?  Second of

36

1       M    We'll want – we want to make sure that they understand

2  that, too.

3       K    Yeah.

4       M    And maybe we'll –

5       K    It was –

6       M     – maybe we'll get that.

7       K    It was over time, and he always had these – this army of

8  attorneys.  And they, you know, they would be – he would be working

9  with attorneys on how to structure these things.  So you know –

10      M    To protect ***.

11      K     – a naive person who's – who doesn't – you know, I didn't

12  suspect anything in – at first.  So it was like, you know, he's a

13  businessman, and he's doing things maybe that I don't –

14      M    Well yeah.

15      K    I don't find particularly ethically –

16      M    You thought he has lawyers.

17      K     – ethical, but they appeared to be, uh, legal because he has

18  lawyers structuring them.  And in my head lawyers don't do anything

19  illegal.  So that was what I thought.

20      M    Okay.  That, that, that's perfectly rational.  You can explain

21  that.  I mean, I think that's a good explanation to give.

22      K    Yeah.

23      M    Um, and remember this, you know, we're, we're kind of

24  asking you these to learn from you about these things.  But remember,

25  these jurors have no background –

26      K    Right.

27      M     – in any of this.  So part of our goal here this morning is to

28  start from the very basics and build their knowledge of the organizations

55

1    K    So that they can pay for the attorneys to sue – her past

2    attorneys, which is also, in a way, it's a double win for them because

3    that's also a cut at me because now my previous attorneys can't

4    represent me because it's a conflict of interest.

5    M    Okay.  What are you doing now?  What are you doing now?

6    Where are you working?

7    K    I work for Rothschild.  It's a global financial advisory firm.

8    Before that, I worked for, um, Barclays.

9    M    And that's a financial –

10    K    It's, uh, yeah, finance.

11    M    What –

12    K    Office manager and executive assistant.

13    M    Okay.  Do you like it?

14    K    Yep.

15    M    Did, uh –

16    K    I went to like the biggest corporation I could find after this.

17    M    Did your lawsuit – did the lawsuit have any impact on your,

18    uh –

19    K    It didn't, but that's one of the reasons why I settled because I

20    was terrified of, um, not being able to – I mean, I was never going to

21    lose because what I had to say was untrue.  But I mean I was just, uh,

22    you know, terrified of missing a date or something.  Like there was no

23    way I could represent myself in something of that magnitude, um, and

24    come out of it.

25    M    Did you have any – did you have any personal contact – was

26    Benjamin Gluck, the, the primary lawyer that was representing the side

27    that was suing you?

28    K    Um –

| Case No | Date of Report | Page |
|---------|----------------|------|
| 2010-F-2096 | 09/21/2015 | 59 of 93 |

56

1    M    Or were there –

2    K    No.  That was – oh God, what was his name?  He was a

3 primary lawyer involved in the final settlement, but the person that was

4 actually –

5    M    ***.

6    K    Yeah.  The person who was actually, um, God, what was his

7 name?

8    M    Hey, look who's here.

9    (background noise)

10    K    The person who was actually, um, litigating it was somebody

11 different, and I can't remember their name.  What was that – what was

12 the firm?  And, um, Tatiana Arnold, who also was a previous attorney of

13 Dr. Uwaydah's who now works for that firm.

14    M    Okay.  *** you have some –

15    K    I would have correspondence – previous correspondence.

16    M    You kept in contact, personal contact with, uh, with him?

17    K    With who?

18    M    ***.

19    K    Gluck, yes.

20    M    Okay.  And in what context have you had personal contact

21 with him?

22    K    I had a, a, a horrible one, where I accidentally ran into him at

23 the doctor recently.  It was like oh, I'm leaving.

24    N    What?

25    K    Uh, um, Gluck, so he was, um, representing Uwaydah in all

26 of the, the – basically all of the lawsuits, all of the civil, um, lawsuits.  He

27 also, um, when we stopped – when I stopped working for Uwaydah, I

28 think was one of the attorneys who was, you know, trying to come after

| Case No | Date of Report | Page |
|---|---|---|
| 2010-F-2096 | 09/21/2015 | 60 of 93 |

57

1    me and make sure that I wasn't cooperating with the authorities and, um
2    —

3        M    Now tell me about that.  Tell me about that.  What does that
4    mean?  What did that entail?

5        K    Uh, threats of lawsuits and, um, uh, um, multiple calls and
6    emails per day, demanding, making demands for these documents, and
7    clear your hard drive, and this belongs to the company and not you and
8    —

9        M    Do you have any of those emails?

10       K    Um, I probably would, yeah.

11       M    I would like to – if you're willing to share those with us, I
12   would like to have those and see those.

13       K    Okay.

14       M    Um.

15       N    Shelly, this is Joe Nantroup.  He's our boss.  He's –

16       J    Right.  I just came in.  And look, I'm not going to stay long.  I
17   just came in to, uh, basically say we – I have a good feeling, from what's
18   happened to you.  And we appreciate you coming down here.  I know it's
19   not easy but we're trying to make all of this right.  Okay?  So we do
20   appreciate your cooperation and, um, you know, when things come up,
21   I've heard you ask if you need immunity or anything like that.  I can tell
22   you you're not a target.  You know who – what we're doing here and
23   what we're looking to do.  Okay?  You –

24       K    You said you can or can't?

25       J    What?  Can?

26       K    You can tell me that I'm not a target or you can't?

27       J    Um, with the rules, am I able to say she's a target or not?

28       M    Yeah, you can.

| Case No | Date of Report | Page |
|---|---|---|
| 2010-F-2096 | 09/21/2015 | 61 of 93 |

# EXHIBIT 5

1                    STATEMENT OF

2                **SHELLY ROSEKELLY**

3      Taken at Clara Shortridge-Foltz Criminal Justice
       Center, Los Angeles.
4
       Case Number:        08-25440
5

6                    APPEARANCES BY

7                    Alan Jackson
                Deputy District Attorney
8      Los Angeles County District Attorney's Office
                Major Crimes Division
9            201 North Figueroa Street
                   Room 17-1140
10        Los Angeles, California  90012

11                  Halim Dhanidina
                Deputy District Attorney
12     Los Angeles County District Attorney's Office
                Major Crimes Division
13           201 North Figueroa Street
                   Room 17-1140
14        Los Angeles, California  90012

15                 Karen Thompson
                   Detective 3107
16        Santa Monica Police Department
                 333 Olympic Drive
17        Santa Monica, California  90401

18                  J. Lavallette
                Senior Investigator
19     Los Angeles County District Attorney's Office
                Bureau of Investigation
20          201 North Figueroa Street,
                   Suite 1500
21        Los Angeles, California  90012

22                 Richard Aloise
               Supervising Investigator
23     Los Angeles County District Attorney's Office
                Bureau of Investigation
24        Automobile Insurance Task Force
               Commerce, California  90040
25

26                 Robert Bernstein
                  Attorney at Law
27              9595 Wilshire Boulevard
                     Suite 900
           Beverly Hills, California  90212
28

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                    REPORTED BY:

25                    Sara A. Mahan
                   Stenographic Reporter
26      Los Angeles County District Attorney's Office
                Stenographic Reporters Unit
27                    CSR #10647

28      sam/10-37

3

```
 1    LOS ANGELES, CALIF., WED., JUNE 30, 2010; 0940

 2

 3

 4

 5

 6

 7

 8

 9

10        MR. JACKSON:  Okay.  Today is the 30th --

11    June 30th, 2010.  And because this is a new

12    round of interviews, let's go around the table

13    and introduce ourselves so the record is very

14    clear about who's here.  We'll start on my left.

15        MR. DHANIDINA:  Halim Dhanidina, Deputy

16    District Attorney.

17        MR. JACKSON:  I'm Alan Jackson.  I'm with

18    the District Attorney's Office, as well, Major

19    Crimes Division.

20        THE WITNESS:  Shelly Rosekelly.

21        MR. BERNSTEIN:  I am Robert Bernstein,

22    Counsel for Shelly Rose Kelly.

23        MS. THOMPSON:  Karen Thompson, Santa Monica

24    Police Department Detective.

25        THE REPORTER:  Sara Mahan, Certified Court

26    Reporter.

27        MR. JACKSON:  Thanks.  Before we begin,

28    Shelly, I'm going to ask the court reporter to
```

1        Q    BY MR. JACKSON:  Or have any control

2    over it.

3        A    Right.  And, again, when all of this --

4        Q    Or -- or have -- or have --

5        A    -- is being set up --

6        Q    Let me finish that point.  Because this

7    is out of my bailiwick -- a physician, in the

8    State of California, should not be telling the

9    person in control of billing for the pharmacy

10   how to bill, correct?

11       A    Correct.

12       Q    So, the conversat- -- the very fact of

13   the conversation between Uwaydah and Kim was

14   outside the standard operating procedures for a

15   medical practice, for a doctor?

16       A    Yes.

17       Q    Okay.  Now, finish your statement.

18       A    And, you know, I mean, part of the way

19   things got to be this -- I mean, I don't

20   understand how he found all these attorneys and

21   all of these professional people who would do

22   all of these things.

23       Q    You don't?

24       A    Well, money, I guess.  It's money.

25       Q    How about $10,000?  How about $10,000 in

26   cash every three days?

27       A    It's money, I -- I guess is what it is.

28   But -- but, whenever -- you know, when we were

1       forming the pharmacy, when we were forming the

2       surgery center -- which the surgery center, as

3       far as I know is still legitimately run -- uhm,

4       when we were forming Fusion, it was at the

5       direction and gui- -- with -- at the direction

6       and guidance of attorneys who were working

7       directly with Dr. Uwaydah --

8            Q    Right.

9            A    -- to create these things.  So, my

10      assumption, until I started looking back at

11      everything through this new lens, you know,

12      given what I know now, my assumption always was,

13      well, you know, these -- this may not be how

14      things should be.  But, these are attorneys.

15      So, it must be legal.  I mean that was,

16      honestly, my -- my assumption, as, you know,

17      these attorneys are talking to him forming this

18      company and directing him -- directing him how

19      to do this.

20              So, there must be something I don't get

21      about --

22           Q    Well, and -- and taking that a step

23      further, let's talk about that for a quick

24      second, just to bring that thought full circle,

25      now that you're looking through -- to use your

26      phrase -- looking through a -- looking through a

27      different lens, do you see -- you might ask

28      yourself, at first blush, how is it that these

# EXHIBIT 6

**UWAYDAH**

**Payment to Various Entities and Individuals**                                                                                                                                                          DRAFT

| ACCOUNT NAME | NAME | ACCOUNT NUMBER | Bank Record Period | Abrish & Corwin | Tedious Arnold & Assoc | Freeman & Mills Inc | Bird Marella | PAYEE | | | | | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Dawson H Gardner/ Law Offices of Dawson H Gardner | Benjamin Gluck | Philip Landsman Esq | Richard Marhov | Mefsolian/ Mefsolian & Associates/ Mefsolian & Freeberg | Roger Muse | Hawkmann & Semundel | Ila Thomson | |
| Controlled Health Management, Inc | Citibank | 204742926 | 8/12-12/13 | | | | $ 135,000.00 | | | | | | | | | $ 135,000.00 |
| Controlled Health Management, Inc/Firstline Health, Inc | Citibank | 205376106 | 8/13-10/14 | | $ 7,500.00 | | $ 319,210.00 | | | | | | | | | $ 326,710.00 |
| Firstline Health Inc DBA US Health and Orthopedic Medical Clinics | Farmers and Merchants Bank | 14203107 | 12/13-9/12 | | | | | | $ 50,000.00 | | | | | $ 40,610.26 | | $ 90,610.26 |
| | First Federal Bank of California | 601604553734 | 9/04-10/08 | | | | | $ 1,650.50 | | | | | | | | $ 1,650.50 |
| Account Receivable LTD | First Federal Bank of California | 601606652111 | 4/04-7/07 | | | $ 36,540.26 | | $ 12,326.16 | | | | | | | $ 171,000.00 | $ 220,146.42 |
| Golden State Pharmaceuticals, LLC | First Federal Bank of California | 601606652897 | 4/07-10/09 | | | | | $ 2,935.25 | | | | | | | | $ 2,935.25 |
| Greenline Medical Management, LLC / Marisa Schemböck DBA Schemböck Management | First Federal Bank of California | 600060605045 | 1/05-2/10 | | | | | $ 24,279.09 | | | | | | | | $ 24,279.09 |
| | First Federal Bank of California | 602700482150 | 10/03-5/10 | $ 165.00 | $ 4,906.00 | | | $ 33,416.49 | | | | | | | | $ 38,322.49 |
| Maule M Uwaydah | First Federal Bank of California | 600605094173 | 4/03-4/06 | | $ 115,109.41 | | | | | $ 362.00 | $ 2,325.00 | $ 29,375.66 | | | $ 90,133.50 | $ 122,361.16 |
| Stronghold Capital LLC | First Federal Bank of California | 601604653293 | 5/06-2/10 | | | | | $ 3,425.75 | | | | | | | | $ 3,425.75 |
| Frontline Medical Associates, Inc | Harvest Bank | 560287438 | 11/09-4/10 | | | | | $ 1,075.10 | | | | $ 2,024.00 | | | | $ 118,206.51 |
| Schemböck Management | JPMorgan Chase Bank | 846073114 | 12/09-4/10 | | | | | $ 5,634.83 | | | | | | | | $ 5,634.83 |
| Beverly Hills 310. Inc | Union Bank of California | 5041012913 | 3/03-4/10 | | | | | | | | | | $ 8,058.04 | | | $ 8,058.04 |
| | | | TOTAL | $ 165.00 | $ 127,515.41 | $ 36,540.26 | $ 454,210.00 | $ 84,743.17 | $ 50,000.00 | $ 362.00 | $ 2,325.00 | $ 31,399.66 | $ 8,058.04 | $ 40,610.26 | $ 261,133.50 | $ 1,097,462.30 |

# EXHIBIT 7

1

```
 1                    STATEMENT OF

 2                 SHELLY ROSEKELLY

 3      Taken at Clara Shortridge-Foltz Criminal Justice
        Center, Los Angeles.
 4
        Case Number:        08-25440
 5

 6                    APPEARANCES BY

 7                     Alan Jackson
                  Deputy District Attorney
 8      Los Angeles County District Attorney's Office
                   Major Crimes Division
 9                201 North Figueroa Street
                        Room 17-1140
10           Los Angeles, California  90012

11                   Leonard Torrealba
             Assistant Head Deputy District Attorney
12      Los Angeles County District Attorney's Office
                  Healthcare Fraud Division
13                201 North Figueroa Street
                        Suite 1500
14           Los Angeles, California  90012

15                    Karen Thompson
                      Detective 3187
16         Santa Monica Police Department
                     333 Olympic Drive
17          Santa Monica, California  90401

18                    J. Lavallette
                    Senior Investigator
19      Los Angeles County District Attorney's Office
                   Bureau of Investigation
20               201 North Figueroa Street,
                        Suite 1500
21           Los Angeles, California  90012

22                    Hector Alvarado
                  Supervising Investigator
23      Los Angeles County District Attorney's Office
                   Bureau of Investigation

24            Organized Crimes/Major Crimes
                   210 West Temple Street,
25                      17th floor
              Los Angeles, California  90012
26
                      Craig Ratliff
27                     Investigator
        Los Angeles County District Attorney's Office
28                 Bureau of Investigation
              Los Angeles, California  90012
```

2

1

2          Robert Bernstein
           Attorney at Law
3          9595 Wilshire Boulevard
               Suite 900
4       Beverly Hills, California   90212

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24              REPORTED BY:

25           Sara A. Mahan
            Stenographic Reporter
26   Los Angeles County District Attorney's Office
            Stenographic Reporters Unit
27               CSR #10647

28   sam/10-39

3

```
 1      LOS ANGELES, CALIF., THURS., JULY 15, 2010; 9:30

 2

 3

 4

 5

 6

 7

 8

 9

10          MR. JACKSON:  Okay.  Let's go back up on the

11      record.  We're here with Shelly Rosekelly.

12              Shelly, you realize that you're still

13      under oath?

14          THE WITNESS:  Yes.

15          MR. JACKSON:  The same oath that you were

16      given at the first portion of your proffer,

17      then, still applies.  You're -- everything that

18      you say today is going to be under penalty of

19      perjury.

20              And it's going to be consistent with the

21      proffer agreement that you've already signed.

22          THE WITNESS:  Yes.

23          MR. JACKSON:  That you're aware of?

24          THE WITNESS: Mmnh-mmnh.

25          MR. JACKSON:  Okay.  Let's make it easy on

26      Sara, a little bit, and state our names for the

27      record.

28          MR. TORREALBA:  I'm Leonard Torrealba,
```

```
 1    enrichment for a physician to profit from where
 2    they take a patient.  Some sort of like a -- it
 3    could be considered a referral fee, or something
 4    of that nature to profit off of that decision.
 5    It's -- a physician is not supposed to base a
 6    decision on where to perform surgery, based on
 7    personal enrichment.
 8           So, this company could not have done
 9    that.  In addition, I believe that most
10    hospitals, when they would sign contracts with
11    the companies, to purchase receivables, I
12    believe it was in the contract that the company
13    was not owned, in any part, by a physician.
14        Q    BY MS. THOMPSON:  And with the Golden
15    State Pharmaceuticals, there's a similar
16    situation.  Isn't it against the law for a
17    physician to own or manage a pharmacy in the
18    State of California?
19        A    I don't --
20        Q    So, that's why he did it --
21        A    I don't know the specific law.
22    Dr. Uwaydah, always had with this, and with the
23    pharmacy, and everything else, sort of a team of
24    attorneys that seemed to be advising him.
25           So, at the time, I assumed that
26    things -- while they may not have been
27    ethical -- were legal.  That was sort of my
28    assumption, until I --
```

# EXHIBIT 8

TRANSACTIONS OF INTEREST FOR INTERESTED ACCOUNTS

EX 81-1

**TRANSACTIONS OF INTEREST FOR INTERESTED ACCOUNTS**

EX 81-2

TRANSACTIONS OF INTEREST FOR INTERESTED ACCOUNTS

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NAME | Frontline Medical Associates Inc | Golden State Pharmaceuticals LLC | Los Angeles Health Partners Medical Group Inc | Accounts Receivable LTD | Marisa Schermbeck DBA Schermbeck Management | Strongheld Capital, LLC | Springboard LLC | California MRI and Diagnostic LLC | Sentinel Health Medical Group Inc | Greenline Medical Management LLC | Fusion Pharmaceuticals LLC | Frontline Medical Associates |
| BANK | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal | One West/ First Federal |
| ACCOUNT NUMBER | 60160652111 | 60160652897 | 60060601697 | 60160655734 | 60270048150 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| PERIOD | 6/7/06-6/30/10 | 4/23/07-6/30/10 | 8/20/06-6/30/10 | 9/20/08-6/30/10 | 6/7/06-6/30/10 | 8/27/06-6/30/10 | 2/8/08-6/30/10 | 11/26/08-6/10/10 | 6/7/06-6/30/10 | 6/7/06-6/30/10 | 6/6/08-6/30/10 | 11/17/06-6/30/10 |
| DDA ASSIGNED ACCOUNT # | Account 1 | Account 2 | Account 3 | Account 5 | Account 6 | Account 7 | Account 8 | Account 9 | Account 10 | Account 11 | Account 12 | Account 13 |
| Total Disbursement | $ 16,392,038 | $ 5,[illegible]12,001 | $ 4,085,656 | $ 20,084,995 | $ 22,765,803 | $ 1,867,621 | $ 1,382,933 | $ 1,959,147 | $ 489,532 | $ 13,877,482 | $ 1,368,266 | $ 670,180 |
| Disbursements to Interested Accounts | | | | | | | | | | | | |
| Frontline Medical Associates Inc, First Federal Bank 60160652111 (Account 1) | | | $ 62,000 | $ 100 000 | $ 3,310 700 | | | | $ 18 000 | $ 125,000 | | |
| Golden State Pharmaceuticals LLC, One West Bank 60160652897 (Account 2) | | | | | $ 1,[illegible] | | | | | | | |
| Los Angeles Health Partners Medical Group Inc., One West Bank 60060601697 (Account 3) | $ 1,116,[illegible] | | | | $ 201 300 | | | | $ 12,500 | | | |
| Accounts Receivable LTD Liability Company, One West Bank 60160655734 (Account 5) | | | | | $ 1,095,000 | | | | | | | |
| Marisa Schermbeck DBA Schermbeck Mgmt, One West Bank 60270048150 (Account 6) | $ 7,393,500 | $ 2,690,700 | $ 288,000 | $ 4,159,000 | | $ 24,000 | $ 18,500 | | $ 151,200 | $ 612,200 | | |
| Str[illegible]hold Capital LLC, One [illegible]nk 60160652293 [illegible]nt 7) | | | | | $ 891,250 | | | | | | | |
| Sp[illegible]board LLC, One West [illegible]1160655092 [illegible]t 8) | $ 250,000 | | | | $ 1,432,550 | | | | | | | |
| Sentinel Health Medical Group Inc., One West Bank 60060607018 (Account 10) | $ 20,500 | | | | $ 400 | | | | | | | |
| Greenline Medical Management, One West Bank 60060605045 (Account 11) | $ 4,586,580 | | | | $ 685,020 | | | | | | | |
| Glackner Group, LLC, JPMorgan Chase 3411466093 (Account 14) | | | | | $ 12,000 | | | | | | | |
| Golden State Pharmaceuticals LLC, JP Morgan Chase 0844073122 (Account 18) | | | | | | | | | | | | |
| Schermbeck Management, JPMorgan Chase 844073114 (Account 19) | | | | | | | | | | | | |
| Springboard LLC, Chase 844073205 (Account 20) | | | | | | | | | | | | |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT NAME | Glackner Group, LLC | Golden State Pharmaceuticals LLC | Schermbeck Management | Springboard LLC | Accounts Receivable LTD liability Company | Frontline Medical Associates Inc | South Bay Surgical and Spine Institute LLC | Strongheld Capital LLC | California MRI Inc | Accounts Receivable Acquisitions, LLC DBA Accounts Receivables Acquisition Associates | Accounts Receivable LTD | Greenline Medical Management | |
| BANK | JPMorgan Chase | JPMorgan Chase | JPMorgan Chase | JPMorgan Chase | Ventura County Business Bank | Hanmi Bank | Hanmi Bank | Hanmi Bank | One West/ First Federal | One West/ First Federal | Ventura County Business Bank | One West/ First Federal | |
| ACCOUNT NUMBER | 3411466093 | 844073122 | 844073114 | 844073205 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | |
| PERIOD | 9/8/09-6/30/10 | 12/3/09-7/6/10 | 10/13/09-7/6/10 | 12/18/09-7/6/10 | 6/4/10-6/21/10 | 11/20/09-6/30/10 | 11/20/09-6/29/10 | 11/20/09-5/29/10 | 3/23/10-6/29/10 | 6/2/06-6/30/10 | 12/14/09-6/4/10 | 8/4/08-6/30/10 | |
| DDA ASSIGNED ACCOUNT # | Account 14 | Account 18 | Account 19 | Account 20 | Account 41 | Account 42 | Account 43 | Account 44 | Account 46 | Account 54 | Account 71 | Account 75 | TOTAL |
| Total Disbursement | $ 1,090,534 | $ 8,517,072 | $ 11,200,579 | $ 345,693 | $ 336,511 | $ 8,997,621 | $ 1,354,878 | $ 1,229,945 | $ 238,324 | $ 13,210,942 | $ 6,944,678 | $ 10,252 | $ 184,572,140 |
| Disbursements to Interested Accounts | | | | | | | | | | | | | |
| Frontline Medical Associates Inc, First Federal Bank 60160652111 (Account 1) | | | | | | $ 50,025 | | | | | | | $ 3,665,725 |
| Golden State Pharmaceuticals LLC, One West Bank 60160652897 (Account 2) | | $ 140,000 | | | | | | | | | | | $ 1,340,000 |
| Los Angeles Health Partners Medical Group Inc., One West Bank 60060601697 (Account 3) | | | | | | | | | | | | | $ 1,331,800 |
| Accounts Receivable LTD Liability Company, One West Bank 60160655734 (Account 5) | | | | | $ 111,993 | | | | | | | | $ 1,206,993 |
| Marisa Schermbeck DBA Schermbeck Mgmt, One West Bank 60270048150 (Account 6) | | $ 298 000 | $ 454 000 | | | | | | | $ 848,000 | | | $ 16,937,100 |
| Str[illegible]hold Capital LLC, One [illegible]nk 60160652293 [illegible]nt 7) | | | | | | | | | | $ 785 600 | | | $ 1,676,850 |
| Sp[illegible]board LLC, One West [illegible]1160655092 [illegible]t 8) | | | | | | | | | | | | | $ 1,682,550 |
| Sentinel Health Medical Group Inc., One West Bank 60060607018 (Account 10) | | | | | | | | | | | | | $ 20,900 |
| Greenline Medical Management, One West Bank 60060605045 (Account 11) | | | | | | | | | | | | $ 10,135 | $ 5,28[illegible] 735 |
| Glackner Group, LLC, JPMorgan Chase 3411466093 (Account 14) | | | $ 211,500 | | | | | | | | | | $ 223,500 |
| Golden State Pharmaceuticals LLC, JP Morgan Chase 0844073122 (Account 18) | | | $ 120,000 | | | | | | | | | | $ 120,000 |
| Schermbeck Management, JPMorgan Chase 844073114 (Account 19) | | $ 5,973 000 | | | | | | | | | | | $ 5,973 000 |
| Springboard LLC, Chase 844073205 (Account 20) | | | $ 331 000 | | | | | | | | | | $ 331,000 |

EX 81–3

TRANSACTIONS OF INTEREST FOR INTERESTED ACCOUNTS

EX 81-4

# EXHIBIT 9

**LWON YUAH**

### INTERNATIONAL TRANSFERS BY INTERESTED ACCOUNTS

| | | | Frontline Medical Associates Inc | One West/ First Federal | Sentinel Health Group Inc | One West/ First Federal | Greenline Medical LLC | One West/ First Federal | JPMorgan Chase | Schwenkbeck Management | Accounts Receivable Acquisitions, LLC DMA Accounts Receivable Acquisition Associates | One West/ First Federal | Controlled Health Management, Inc | Controlled Health Management, Inc/Firstline Health, Inc | Venture Collection & Management LLC (DMA) Golden State | Farmers & Merchant Bank Pharmaceuticals | Venture Collection & Management LLC /Frontline Medical Associates (DMA) | Farmers & Merchant Bank | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ACCOUNT NAME | | | | | | | | | | | | | | | | | |
| | | ACCOUNT NUMBER | 0360453111 | 0300260201 | 0300260201 | 0300260065 | 0300260065 | 8440721L | | 00000501699 | | 2047625215 | 2053764106 | 1415990D | | 145951213 | | |
| | | BANK STATEMENTS PERIOD | 6/1/05– 6/30/10 | 2/6/03– 6/30/10 | | 4/1/05– 6/30/10 | | 12/30/09– 7/6/10 | | 6/1/05– 6/30/10 | | 6/29/12– 10/7/13 | 8/27/13– 10/31/14 | 7/2/10–6/13/13 | | 6/1/11– 9/29/13 | | |
| | | DOA ASSIGNED ACCOUNT # | Account 1 | Account 10 | | Account 10 | | Account 11 | | Account 19 | Account 54 | | | | | | | | |
| Germany | 10/18/06– 3/3/07 | Holger Blank Co Accounts Rec Acquisitions LLC, DRTCO America I 031001033 | | | | | | | | $ 505,380 | | | | | | | | $ 505,380 |
| Germany | 12/12/2013 | Sachsische Naturstein Kantor, Commert Bank acct. DE8650400000014361400 | | | | | | | | | $ 20,053 | | | | | | $ 20,053 |
| Germany | 02/06/2014 | Salsns PMC Denton Europe LLP, Deutsche Bank acct. DE34100700000008020200 | | | | | | | | | $ 10,781 | | | | | | $ 10,781 |
| | | **Germany Total From 2/7/07-2/6/14** | $ 935,532 | $ - | $ - | $ 928,000 | $ 113,856 | $ - | $ 5,888,580 | $ 4,077,793 | $ 30,834 | $ 230,718 | $ - | $ - | | | **$ 11,758,352** |
| Lebanon | 4/6/00– 5/27/10 | Blom Bank Sal Beirut Lebanon | | | | | | | $ 192,000 | | | | | | | | $ 192,000 |
| Lebanon | 2/5/07/09 | Blom Tripoli/Suk St NYC 192832725 | $ 50,000 | | | | $ 100,000 | | | | | | | | | | $ 150,000 |
| Lebanon | 5/6/4/09 | Fredjane Rasryr Umeriphly BK of NYC 00000001353M | | | | | | | | | | | | | | | $ 57,200 |
| Lebanon | 3/68/07 | Investissement and Acquisition Overseas, Bk of NYC 003452725 | | | $ 50,000 | $ 80,000 | | | | | | | | | | | $ 50,000 |
| Lebanon | 3/8/07 | Investment and Acquisition Overseas, Bk of NYC 00000000000EREM | | | $ 354,900 | | | | | | | | | | | | $ 64,900 |
| Lebanon | 3/18/07 | Investment and Acquisition Overseas, Bk of NYC 00000000000EREM | | | | | | | | | | | | | | | $ 354,900 |
| Unknown | 1/13/2014 | Investment and Acquisition Depenney Share Bank 1000000000000000000000EREM | | | | | | | | $ 4,994,000 | | | | | | | $ 2,254,000 |
| | | | | | | | | | | | | | | | | | **$ 9,924,000** |
| misc | 4/26/09 | Medcomshield N A LT/Scheta Sale of NYC J/Morgan Chase 03720 Am hun 0000280000019535S1 | $ 4,540,000 | | | | | | | | | | | | | | $ 4,500,000 |
| misc | 1/25/13 | MedcomitluntsSA LT/H | | | $ 50,000 | | | $ 50,000 | | | | | | $ 500,000 | | | $ 550,000 |
| Lebanon | 3/8/13 | MedcomilluntSA LT/H | | | | | | | | | $ 50,000 | | | | | | $ 50,000 |
| unknown | 12/23/14 2/7/14 | Kenya City Lawyers Lebanon T/Tp, Prema Bank 54356373 | | | | | | | | | $ 58,000 | | | | | | $ 58,000 |
| | | **Lebanon Total From 6/17/07-15/7/14** | $ 5,590,000 | $ - | $ 60,000 | $ 478,900 | $ 170,000 | $ - | $ 7/000 | $ 7/000 | $ 2,700,000 | $ 550,000 | $ - | $ - | | | **$ 18,005,000** |
| Mexico | 1/9/12– 6/15/12 | Corexions SA de CV | | | | | | | | | | $ 105,000 | | | $ 105,000 |
| | | **Mexico Total From 1/9/14-6/15/12** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 105,000 | $ - | | | **$ 105,000** |
| | 9/18/06– | | | | | | | | | | | | | | | | |
| Unknown | 6/25/07 | Gate 7, Bk of NYC 895477 | | | $ 2,550,030 | | | | | | | | | | | $ 2,550,030 |
| Unknown | 03/12/2010 | Grichtskasse Rodn | | | | | $ 400,000 | | | | | | | | | $ 400,000 |
| Unknown | 4/20/10 | Gestui Echterlven | | | | | $ 328,358 | | | | | | | | $ 328,358 |
| Unknown | 5/16/10 | rksise Rechlbonn | | | | | $ 100,070 | | | | | | | | $ 100,070 |
| Unknown | 03/16/2010 5 12/23/11– | | | | | | | | | | | $ 124,687 | | | $ 124,687 |
| Unknown | 6/9/14 | International Transfers with No Support Documents | | | | | | | | | | $ 124,687 | | | $ 395,180 |
| | | **Unknown Total from 9/18/06–6/9/14** | $ - | $ - | $ - | $ 2,550,030 | $ 828,428 | $ - | $ - | $ - | $ - | $ 124,687 | | | **$ 3,772,688** |
| | | **Grand Total** | $ 2,856,900 | $ 50,000 | $ 60,000 | $ 6,056,890 | $ 4,154,785 | $ - | $ 5,485,580 | $ 6,045,089 | $ 7,009,781 | $ 1,112,536 | | | **$ 30,077,946** |

**EX 83–2**

# UWAYDAH
## INTERNATIONAL TRANSFERS BY INTERESTED ACCOUNTS

| ACCOUNT NAME | Frontline Medical Associates Inc | Santient Health Medical Group Inc | Greenline Medical Management LLC | Schwamberch Management | JPMorgan Chase | Accounts Receivable Acquisitions, LLC DBA Accounts Receivable Acquisition Associates | Controlled Health Management, Inc | Controlled Health Management, Inc/Frontline Health, Inc | Ventura Collection & Management & Management LLC (DBA) Pharmaceuticals | Farmers & Merchant Bank | Ventura Collection & Management LLC (DBA) Golden State Medical Associates (DBA) | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BANK | | | | | | | | | | | | |
| ACCOUNT NUMBER | 601405S2111 | 606060S0245 | 606060605045 | | 606060S0689 | 605X763726 | 295376106 | 4130999 | | | | |
| BANK STATEMENTS PERIOD | 6/7/09- 6/20/10 | 2/4/09- 6/20/10 | 6/20/10 | 11/19/09- 7/6/10 | 4/7/06- 6/20/10 | 9/20/12- 10/7/13 | 8/27/13- 10/31/14 | 7/7/10-6/13/12 | 6/1/11- 8/29/12 | | | |
| DDA ASSIGNED ACCOUNT | Account 1 | Account 10 | Account 11 | Account 19 | Account 54 | | | | | | | |
| **Total Disbursement** | **$56,892,086** | **$1,590,373** | **$17,162,864** | **$11,200,579** | **$16,461,381** | **$7,580,730** | **$17,576,606** | **$1,664,783** | **$1,573,304** | | | **$104,808,783** |

| Location | Funding Period | International Transfers | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Belgium | 02/19/2013 | Louis Swennen, KBC Bank NV 3369032284 | | | | | | 23,273 | | | | | 23,273 |
| | Belgium Total on 2/19/13 | | | | | | | 23,273 | | | | | 23,273 |
| Estonia | 4/2/08 6/23/08 | Janek Hunt, JPMorgan Chase/DBTCO Americas 302200011001 | | | $1,216,960 | | | | | | | | 1,216,960 |
| Estonia | 1/23/04 1/23/07 | Janek Hunt, JPMorgan Chase 920000119D1234 | | | $850,400 | | | | | | | | 850,400 |
| Estonia | 3/18/09 9/12/12 | Karin Uwaydah, JPMorgan Chase/DBTCO Americas 221011476101 | $367,271 | | $133,500 | | | | | | | | 500,771 |
| Estonia | 11/12/14 6/14/12 | Medical Technology Mgmt, SwedBank CC4122000210S2484055 | | | | | $1,935,545 | 4,332,536 | | | | | 6,268,082 |
| Estonia | 7/2/13 3/12/13 | Medical Technology | | | | | | | 219,499 | | | | 219,499 |
| Estonia | 10/20/2014 2/2/10 | CU Aleksleadouroo Evershieds ObsLC SwedBank EE87220022101386402Z | | | | | 8,479 | 29,823 | | | | | 38,302 |
| Estonia | 3/7/10 | Tahm Estoma | | | | 110,500 | | | | | | | 110,500 |
| | Estonia Total From 1/23/07-3171/14 | | $367,271 | | $2,200,860 | 110,500 | $1,935,545 | $4,362,359 | 219,499 | | | | 9,204,514 |
| France | 08/09/2012 | STC Sefari | | | | | | | 7,269 | | | | 7,269 |
| | France Total on 8/9/12 | | | | | | | | 7,269 | | | | 7,269 |
| Germany | 3/12/13- 4/22/13 | JKae Kehl, SPARKASSE CELLE 5025750001005118P563 | | | | | 39,637 | | | | | | 39,637 |
| Germany | 10/24/07- 8/7/11 | Holger Blank | | | | 112,856 | | | | | | | 112,856 |
| Germany | 06/19/2007 2/23/07- | Holger Blank, DBTCO Americas 2916269700 | $40,200 | | | | | 280,758 | | | | | 393,614 / 40,200 |
| Germany | 11/26/07 5/15/09- | Holger Blank, DBTCO Americas 12718301 | $899,332 | | $928,000 | | | | | | | | 1,827,331 |
| Germany | 10/24/09 2/7/07- | Holger Blank, JPMChase 3181699103 | | | | | 755,000 | | | | | | 755,000 |
| Germany | 4/23/09 | Holger Blank Co Accounts Rec Acquisitions LLC, Commerzbank/DBTCO Americas 12718300 | | | | | $4,128,200 | $4,038,165 | | | | | 8,166,365 |

Page 1 of 2

EX 83-1

# EXHIBIT 10

# Uwaydah Civil Lawsuit Table

| | Case No. | Filing Date | Plaintiff/Petitioner | Defendant/Respondent | Attorney(s) for Plaintiff | Attorney(s) for Defendant | Case Type |
|---|---|---|---|---|---|---|---|
| 1 | SC081098 | 03/19/2004 | Accounts Receivable Acquisitions | Al-Madaj Saud Khaleefa | Law Offices of Bo Thoreen | Not stated on summary | Othr Breach Contr/Warr-not Fraud (General) |
| 2 | BC441301 | 07/09/2010 | Accounts Receivable Acquisitions | Accounts Receivable Ltd. Liability Company Marisa Schermbeck | Henry R. Fenton Benjamin J. Fenton Nicholas D. Jurkowitz (Fenton & Nelson, LLP) | Not stated on summary | Declaratory Relief Only (General) |
| 3 | BC460413 | 04/27/2011 | Accounts Receivable Acquisitions | California MRI | Phillip Allan Trajan Perez (Archer Norris) | Not stated on summary | Collections Case-Seller Plaintiff |
| 4 | BC476653 | 01/12/2012 | Accounts Receivable Acquisitions | Atla Hollywood Hospitals; Hollywood Community | Phillip Allan Trajan Perez (Archer Norris) | Ellen J. Shin | Othr Breach Contr/Warr-not Fraud (General) |
| 5 | BC480141 | 03/06/2012 | Frontline Medical Associates, Inc.; Accounts Receivable Acquisitions | Dewitt, Algorri & Algorri, APC; Bergener & Associates; Dietrich Canterberry | Michael R. Newhouse Robin Ratner (Newhouse Seroussi Attonerys, PC) | Mark Algorri; Baker Kenner & Algorri; Baker Keener & Nahra LLP; James B. Hardin; Newport Trial Group; Robert C. Baker; Taylor Blessey LLP | Contractual Fraud (General) |
| 6 | BC438708 | 05/27/2010 | Accounts Receivable Ltd. | San Fernando Community Hospital, Inc | Phillip Allan Trajan Perez (Archer Norris) | Not stated on summary | Other Contract (General) |

| # | Case No. | Date | Party | Party | Attorney | Attorney | Type |
|---|---|---|---|---|---|---|---|
| 7 | 11E07601 | 07/11/2011 | Accounts Receivable Ltd. | Mission Community Hospital; San Fernando Community Hospital | Not stated on summary | Not stated on summary | Breach of Contract (limited) |
| 8 | BC466016 | 07/22/2011 | Accounts Receivable Ltd. | Sun Capital Healthcare Inc., et al | Phillip Allan Trajan Perez (Archer Norris) | Buchalter Nemer (Co | Othr Breach Contr/Warr-not Fraud (General) |
| 9 | LC095737 | 12/12/2011 | Accounts Receivable Ltd. (also X-defendant) | San Fernando Community Hospital, et al | Phillip Allan Trajan Perez (Archer Norris) | Thomas Gerald Gehri | Othr Breach Contr/Warr-not Fraud (General) |
| 10 | BC555885 | 08/28/2014 | Accounts Receivable Limited Inc. | San Fernando Community Hospital, et al | Matthew D. Rifat | Thomas G. Gehring; Robert J. Romero; Rebecca R. Weinreich | Breach Contract/Warnty- Negligence (General Juris) |
| 11 | BC480477 | 03/13/2012 | Coastline DMC, LLC | San Fernando Community Hospital | Michael R. Newhouse | Thomas Gerald Gehri | Contractual Fraud (General) |
| 12 | BC568023 | 12/30/2014 | Glockner Group, LLC | Mark Ioele; Eagle Eye Imaging Center LLC | Stephen Z. Boren Matthew D. Rifat LLP | Not stated on summary | Fraud (no contract) (General) |
| 13 | NC037118 | 06/18/2005 | Redhawk Pharmacy Management, Inc. | Empyrean Medical Management; Uwaydah Munir | Stephen V. Wickersham | Not stated on summary | Breach Contract/Warnty (seller pltf) (General) |
| 14 | BC464073 | 06/23/2011 | Vivian Birndorf | Beverly Orthopedic Physical Therapy, Inc.; Paul Turley | William C. Clevenger; Stanley T. Denis | Philip Allan T. Perez | UD/Commercial (not drugs/evict) (general) |

| # | Case No. | Date | Plaintiff | Defendant | Attorney | Attorney | Case Type |
|---|---|---|---|---|---|---|---|
| 15 | BC486331 | 06/08/2012 | Abel Quesada M.D. | Firstline Health Inc. | Malcolm S. Mcneil | Aaron Daniel Aftergo | Othr Breach Contr/Warr-not Fraud (General) |
| 16 | BC503454 | 03/20/2013 | Physician Management Services, Inc. | Firstline Health Inc.; Frontline Medical Associates, Inc.; David Johnson; Paul Turley | Mark Furuya | Raymond L. Riley | Other Contract (General) |
| 17 | BC503485 | 03/20/2013 | GR Medical Management, Inc | Frontline Medical Associates; Firstline Health Inc.; Paul Turley | Mark Furuya; Phillip Allan Perez | Raymond L. Riley | Other Contract (General) |
| 18 | 13K09692 | 06/27/2013 | Raymond Reveles | Firstline Health Inc. | Not stated on summary | Raymond Reveles | End of judgment-conf. labor comm. Award (limited juris) |
| 19 | 15A10036 | 06/29/2015 | Northern California Collections | Firstline Health Inc. | Not stated on summ | Not stated on summary | Collections Case (limited jurisdiction) |
| 20 | 15V06474 | 07/27/2015 | Allstate Offices & Building Maintenance, Inc. | Firstline Health Inc. | Not stated on summ | Not stated on summary | Small Claims (limited jurisdiction) |
| 21 | 16U02866 | 03/09/2016 | United Teachers of Los Angeles | Firstline Health Inc. | Matthew D. Rifat | Safarian Choi & Bolstad LLP | U.D. Commercial (limited) |
| 22 | BC537119 | 02/24/2014 | Fusion Pharmaceuticals LLC | CDM Corportation Et Al | Nehoray Legal Group | Matthew D. Rifat | Contractual Fraud (General) |
| 23 | BC545752 | 05/15/2014 | Fusion Pharmaceuticals LLC | Cecon Group Inc | Pepper Hamilton LLP | The Aftergood Law Firm | Contact-Tortious Interference (General) |

| | | | | | | Other commerica/business tort (general jurisdiction) |
|---|---|---|---|---|---|---|
| 24 | BCS93339 | 09/02/2015 | Fusion Pharmaceuticals LLC | CDM Corportation Et Al Laura Estrada (X-Defen) | Matthew D. Rifat | Mac E. Nehoray |
| 25 | BC478485 | 02/06/2012 | Gestut Eichenhain | Ray Texel | Phillip Allan T. Perez | Not stated on summary — Contractual Fraud (General) |
| 26 | BC382029 | 12/11/2007 | Munir Uwaydah; Los Angeles Health Partners Medical | Service Employees International | Richard G. Green | Fredric D. Woocher — Other Contract (General) |
| 27 | BC336922 | 07/21/2005 | Los Angeles United Medical Management | Dwight James Portervillevally Prompt Care Medical Center | Bo Thoreen | Daniel M. Graham — Othr Breach Contr/Warr–not Fraud (General) |
| 28 | BC402131 | 11/18/2008 | Los Angeles United Medical Management | Dwight James Portervillevally Prompt Care Medical Center | Archer Norris | Daniel M. Graham — Othr Breach Contr/Warr–not Fraud (General) |
| 29 | BC453087 | 01/14/2011 | Los Angeles United Medical Management | Bo Thoreen | Phillip Allan T. Perez | Not stated on summary — Legal Malpractice (General) |
| 30 | PC037833 | 11/17/2005 | Berkeley Medical Management Corp.; Clinton Beyerle | Millenium Medical Group of San Fernando; Frontline Medical Associates Inc; Paul Turley | Gary A. Weis | Not stated on summary — Othr Breach Contr/Warr–not Fraud (General) |
| 31 | 07SO1918 | 08/28/2007 | Millennium Medical Group of San Fernando | Sheri Manning | Not stated on summary | Not stated on summary — Small Claims (limited jurisdiction) |

| | | | | | | |
|---|---|---|---|---|---|---|
| 32 | 08S01615 | 07/09/2008 | Millennium Medical Group of San Fernando | Law Offices of Goldflam and Barth | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |
| 33 | PC046280 | 08/31/2009 | Millennium Medical Group of San Fernando | Robert D. Trette; Deborah L. Trette | Richard G. Green | Not stated on summary | Other Real Property Rights Case (General) |
| 34 | BC448103 | 10/25/2010 | Mars-B Inc | Millenium Medical Group of San Fernando; Paul Turley; Munir Uwaydah | Michelle O. Saadeh | Not stated on summa | Breach Rental/Lease (Not UD/Evict) (General) |
| 35 | BC317756 | 06/29/2004 | Bristol Medical Clinic Inc. | Munir Uwaydah | Richard Weiss | Bo Thoreen | Contracy-Tortious Interference (General) |
| 36 | SC082407 | 07/30/2004 | Munir Uwaydah, Inc. et al | Heidi Majdedin et al | Bo Thoreen | Malcolm S. McNeil; Ball Carlsmith | Other Contract (General) |
| 37 | BC319506 | 08/03/2004 | Atlantis Management Group Inc. | Munir Uwaydah | Malcolm S. Mcneil | Bo Thoreen | Collections Case-Seller Plaintiff |
| 38 | BC331910 | 04/14/2005 | Avedis Tavitian et al | Munir Uwaydah et al | James L. Arnone | George A. Almodovar | Contractual Fraud (General) |
| 39 | 05SL3792 | 12/20/2005 | Arian Cerebras | Munir Uwaydah | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |
| 40 | 06S00811 | 03/21/2006 | Arian Cerebras | Munir Uwaydah | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |

| | | Maria De Lourdes Reyes | San Fernando Community Hospital; Munir Uwaydah; Regents of the University of California | Donald Chidi Amamgbo | Geoffrey T. Moore | Othr Profes Health Care Malpractice (General Jurisdiction) |
|---|---|---|---|---|---|---|
| 41 | LC089732 | 05/11/2010 | | | | |
| 42 | SC083154 | 10/13/2004 | Munir Uwaydah | Prometheus Health Imaging, Inc. | Bo Thoreen | Not stated on summary | Declaratory Relief Only (General) |
| 43 | SC098057 | 05/02/2008 | Prometheus Health Imaging, Inc.; Munir Uwaydah | Khaled H. Ghandour | Green & Marker | Pro Per | Other commerica/business tort (general jurisdiction) |
| 44 | SC098549 | 06/09/2008 | Munir Uwaydah | Prometheus Health Imaging, Inc. et al | Bosco Ward & Cicconi | Tatiana Torres-Arnold | Other Contract (General) |
| 45 | SC104793 | 09/09/2009 | Munir Uwaydah | Prometheus Health Imaging, Inc. | Richard G. Green | Not stated on summary | Other Contract (General) |
| 46 | YC060642 | 09/17/2009 | Munir Uwaydah | Prometheus Health Imaging, Inc. | Green & Marker | Not stated on summary | Other Contract (General) |
| 47 | SC086985 | 09/19/2005 | Rehabilitation Orthopaedic Physical Therapy | Sentinel Health Medical Group, Inc.; Munir Uwaydah | Friedman Joshua P. and Associates | Bo Thoreen | Contractual Fraud (General) |
| 48 | BC355188 | 07/11/2006 | La Jolla Neurosurgical Associates; Frank J. Coufal | Sentinel Health Medical Group, Inc.; Munir Uwaydah | Raymond L. Riley | Bo Thoreen | Contractual Fraud (General) |

| No. | Case Number | Date | Plaintiff | Defendant | Plaintiff Attorney | Defendant Attorney | Case Type |
|---|---|---|---|---|---|---|---|
| 49 | BC408102 | 02/20/2009 | Jorge Garcia | South Bay Surgical and Spine Institute; Peter Nelson; Munir Uwaydah | Jose Perez | Archer Norris; Tatiana Arnold | Med Malpractice (Drs & Surgeons) (General) |
| 50 | NCO54056 | 01/26/2010 | South Bay Surgical and Spine Institute Inc | Accreditation Association | Tatiana Arnold & Associate | Kullik Gottesman Mouton & Siegel | Contractual Fraud (General) |
| 51 | BC467428 | 08/11/2011 | South Bay Surgical and Spine Institute Inc | Marisa Schermbeck; Shelly Anne Rosekelly | Michael Newhouse | Pro Per | Other commerica/business tort (general jurisdiction) |
| 52 | BC467429 | 08/11/2011 | South Bay Surgical and Spine Institute Inc | Shelly Anne Rosekelly | Michael Newhouse | Not stated on summary | Other Compl-not Tort or Complex (General) |
| 53 | 12CL1977 (org. case no. 12CO1977) | 05/24/2012 | Jay B. Toleneino; State of Californoa Department of Industrial Relations | South Bay Surgical and Spine Institute Inc | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |
| 54 | 16IWSO2800 | 09/01/2016 | Jeffrey Harry Derkach | Blue Oak Medical Group; Controlled Health Management Inc. | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |
| 55 | BC556528 | 09/02/2014 | California Company | Los Angeles Real Estate Group; Pacific MRI & Diagnostics Inc.; Jeff Stevens | Matthew D. Rifat | Not stated on summary | Othr Breach Contr/Warr-not Fraud (General) |

| | | | | | | |
|---|---|---|---|---|---|---|
| 56 | BC565053 | 11/26/2014 | California Company | Los Angeles Real Estate Group; Pacific MRI & Diagnostics Inc.; Jeff Stevens | Matthew D. Rifat | Not stated on summary | Other commerica/business tort (general jurisdiction) |
| 57 | BC570652 | 01/27/2015 | California Company | California MRI; Pacific MRI & Diagnostics Inc.; Redi Medical Trasportation; Jeff Stevens | Brissman & Nemat | Richard A. Moss | Othr Breach Contr/Warr-not Fraud (General) |
| 58 | GC039363 | 07/27/2007 | Frontline Medical Associates Inc. | Jeff Holmes (also Pro Per); Cindy Ogden | Green & Marker; Tatiana Arnold & Associates | Blanchard Law Group; Jeffrey E. Lieber | Other Real Property Rights Case (General) |
| 59 | 10K00054 | 01/04/2009 | Paul Turley Frontline Medical Associates Inc. | Beverly Hills Classic Cars; Andrew Cohen | Tatiana Arnold & Associate | Not stated on summary | Personal Injury (limited) |
| 60 | BC406915 | 02/03/2009 | Munir Uwaydah; Frontline Medical Associates Inc. | Bruce M. Roth | Fenton & Nelson LLP; Jeffrey R. Ward | Thomas M. Brown | Defamation (Slander/Libel) (General) |
| 61 | LC084396 | 02/11/2009 | Jennifer Milone | Munir Uwaydah; Frontline Medical Associates; San Fernando Community Hospital; Mission Community Hospital | Pro Per | Milton E. Foster III; Joseph Vladimir Macha; Geoffrey T. Moore | Med Malpractice (Drs & Surgeons) (General) |

| | | | | | Angela C. Agrusa | Epstein Becker & Green Law Offices | Breach Contract/Warnty-Negligence (General Juris) |
|---|---|---|---|---|---|---|---|
| 62 | BC412769 | 04/30/2009 | Frontline Medical Associates, Inc. | Coventry Health Care Workers Compensation; First Health Group Corp.; Focus Healthcare Management, Inc. | | | |
| 63 | BC418409 | 07/22/2009 | Paul Turley; Frontline Medical Associates Inc. | Beverly Hills Classic Cars; Andrew Cohen | Tatiana Torres-Arnold | Not stated on summary | Contract fraud (general) |
| 64 | BS126499 | 05/21/2010 | Brian J Stiger | Frontline Medical Associates Peter Nelson Munir Uwaydah | Heidi Weisbaum | Not stated on summary | Civil Petition-Other (General) |
| 65 | 10V06356 | 09/29/2010 | Christopher Dunbar (Canoga Park Check Cashing) | Frontline Medical Associates, Inc.; Claudia L. Lara; Wendee Luke | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |
| 66 | 10SV2166 | 11/08/2010 | Majoers Liquor and Check Cashing | Paul Turley; Frontline Medical Associates | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |
| 67 | 10SV2108 | 11/17/2010 | Majoers Liquor and Check Cashing | Paul Turley; Frontline Medical Associates | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |
| 68 | BC449676 | 11/19/2010 | Frontline Medical Associates, Inc. | Schermbeck Management; Marisa Schermbeck | Ben Gluck | Rosen & Saba LLP | Other commerica/business tort (general jurisdiction) |

| | | | | Mark M. Scott | Archer Norris | Breach Rental/Lease (Not UD/Evict) (General) |
|---|---|---|---|---|---|---|
| 69 | BC451553 | 12/20/2010 | CIT Technology Financing Services, Inc. | | | |
| 70 | 11CL0915 | 03/03/2011 | Monica Smith; State of CA Dept of Industrial Relations | Frontline Medical Associates, Inc. | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |
| 71 | 11CL0916 | 03/03/2011 | Joan Deartemis; State of CA Dept of Industrial Relations | Frontline Medical Associates Inc. | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |
| 72 | 11CL1150 | 03/21/2011 | Gerald A. Grega; State of CA Dept of Industrial Relations | Frontline Medical Associates, Inc. | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |
| 73 | 11CL1157 | 03/27/2011 | Joseph Gutierrez; State of CA Dept of Industrial Relations | Frontline Medical Associates, Inc. | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |
| 74 | 11CL1158 | 03/28/2011 | Erika Hernandez; State of CA Dept of Industrial Relations | Frontline Medical Associates, Inc. | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |
| 75 | 11CL1159 | 03/28/2011 | Lizette Chavez; State of CA Dept of Industrial Relations | Frontline Medical Associates, Inc. | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |
| 76 | 11CL1160 | 03/28/2011 | Rosa A. Chavez; State of CA Dept of Industrial Relations | Frontline Medical Associates, Inc. | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 77 | 11V02575 | 04/13/2011 | Pablo Miguel Cruz | Frontline Medical Associates, Inc.; Natalia Martinez | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |
| 78 | 11V02500 | 04/13/2011 | Antonio Olasaba Olmos | Frontline Medical Associates Inc.; Natalia Martinez | Not stated on summary | Not stated on summary | Small Claims (limited jurisdiction) |
| 79 | 11CL1447 | 04/26/2011 | Alcaraz Luz; State of CA Dept of Industrial Relations | Frontline Medical Associates, Inc. | Not stated on summary | Not stated on summary | Labor Comm. Award (limited jurisdiction) |
| 80 | BC464703 | 06/23/2011 | Vivian Birndorf | Beverly Orthopedic Physical Therapy, Inc.; Paul Turley, and MORE | William C. Clevenger Stanley T. Denis | Philip Allan T. Perez; Raymond L Riley | UD/Commercial (not drugs/evict) (general) |
| 81 | 11K12408 | 07/22/2011 | Eduardo Saldovar | Frontline Medical Associates, Inc. | Labor Commisioner State of CA | Not stated on summary | Enf. Of Judgment- Conf. Labor Comm Award (limited) |
| 82 | 11K12409 | 07/22/2011 | Susana Mejia | Frontline Medical Associates, Inc. | Labor Commisioner State of CA | Not stated on summary | Enf. Of Judgment- Conf. Labor Comm Award (limtied) |
| 83 | BS133017 | 07/22/2011 | Anthony Taylor | Frontline Medical Associates Inc. | Labor Commisioner State of CA | Not stated on summary | Admn Agency Award (not upaid taxes) (general) |
| 84 | BC480375 | 03/08/2012 | Frontline Medical Associates, Inc. | Frank Bardi; Spectrum Medical X Ray Company | Phillip Allan T. Perez | Not stated on summary | Collections Case-Seller Plaintiff |
| 85 | SC117018 | 05/11/2012 | Frontline Medical Associates Inc. | Green & Marker; Glenn Richard Green | Kayla S.S. Betbout | Not stated on summary | Othr Breach Contr/Warr-not Fraud (General) |

| | | | | | |
|---|---|---|---|---|---|
| 86 | BC493358 | 10/05/2012 | People of the State of California, et al | Total Care Medical Center; Frontline Medical Associates Inc. | Knox Ricksen LLP; Office of the Los Angeles City Attorney | AT&T legal group; Marella Boxer Wolpert Nessim Bird; Jeffrey B. Endler; Carlson & Jayakumar LLP; Alexander W. Kirkpatrick; Matthew Rifat; James Uyeda | Fraud (no contract) (General) |
| 87 | 13K15416 | 10/31/2013 | Frontline Medical Associates, Inc. | Best Western Carriage Inn; State Compensation Insurance Fund | Michael G. Freeman | Not stated on summary | Enf. Of Judgment- Request for workers' comp judg (limited) |
| 88 | 05C02136 | 10/07/2005 | National Relocation Services | GR Medical Management, Inc. | Not stated on summary | Not stated on summary | Breach Contract (Limited Jurisdiction) |
| 89 | PC039525 | 09/28/2006 | Trisco Resources, Inc. et al | GR Medical Management | Guy E. Jamison | Lloyd Douglas Dix LLP | Collections Case-Seller Plaintiff |
| 90 | BC414944 | 06/02/2009 | Myone Bollinger | County of Los Angeles; Cross-Defendant: Steven Brourman, GR Medical Management, Laughlin Falbo Levy & Mortesi LLP, Office of the County Counsel; Rita Reyes-Schmitt | Arash Homampour | Elizabeth Kessel; Lawrence Borys; Jack R. Reinholtz; Raymond L. Riley | Other Employment Complaint (General Jurisdiction) |

| | | | | | | | Insurance Coverage (limited jurisdiction) |
|---|---|---|---|---|---|---|---|
| 91 | 15K13859 | 11/03/2015 | Creditors Adjustment Bureau Inc. | GR Medical Management; Comprehensive Healthcare Partners; Medical Billings Services | Kenneth J Freed | Riley & Reiner | Insurance Coverage (limited jurisdiction) |
| 92 | BC300360 | 08/08/2003 | Mayfield Medical Ventures Inc. | Newhope Diagnostics et al | Victor A. Sahn Bo Thoreen | James W Harris | Other Compl-not Tort or Complex (General) |
| 93 | SC105592 | 11/09/2009 | Ronnie Case Motorsports | 3206 Washington Associates | Tatiana Torres-Arnold | Not stated on summary | Other Real Property Rights Case (General) |
| 94 | EC046860 | 03/14/2008 | Network Commercial Service Inc. | Sherwood Financial and Investments Inc. | Siegel & Siegel Law Offices | Green & Marker | Collections Case-Seller Plaintiff |
| 95 | 08CG2376 | 03/07/2008 | Law Offices of Odalis C. Suarez | Heath Resources; Southern California Orthopedic | Law Offices of Odalis C. Suarez | Not stated on summary | Interpleader (limited) |
| 96 | 08E10028 | 08/06/2008 | Marco Alvarez | Illig Construction Company; Southern California Orthopedic | Steven L. Friedman | Not stated on summary | Other complaint-other (limited jurisdiction) |
| 97 | 08E16809 | 12/30/2008 | Souther California Orthopedic | Law Offices of Steven Fabbro; Steven Fabbro | Robert Alan Weinberg | Steven August Fabbro | Collections Case (limited jurisdiction) |
| 98 | BC532797 | 01/10/2014 | Kimberly Boyd et al | Paul R Bennett et al (including So. CA Orthopedic) | Salvatore Desimone; Uyeda Law Office | Daniel H. Abrahamian; Bradley Clark; Gregory Hulbert; Michael A. Zuk | Med Malpractice (Drs & Surgeons) (General) |

| 99 | 16K12720 | 10/18/2016 | Claudia Veltre | Southern California Orthopedic; Porter Ranch Quality Care | Langberg Law | Not stated on summary | Other tort (limtied jurisdiction) |
|---|---|---|---|---|---|---|---|
| 100 | BC399458 | 10/06/2008 | Ventura County Business Bank | Alliance Bank; California Bank & Trust | Simon Aron; Timothy L. Neufeld; Wasserman Comden Casselman & Esensten | Steven Casselberry | Other Contract (General) |
| 101 | BC426616 | 11/20/2009 | Ventura County Business Bank | East West Bank | Diane F. Suchter | Lois Moonitz Jacobs | Other Contract (General) |
| 102 | BC485327 | 05/25/2012 | Jeffrey Stevens | West Coast Medical, Inc. | Richard Omar Evanns | Not stated on summary | Othr Breach Contr/Warr-not Fraud (General) |
| 103 | PC054017 | 11/07/2012 | Redi-Chex, Inc. | West Coast Medical, Inc.; Andrew Cucuiat | Plaintiff in Pro Per | Not stated on summary | Othr Breach Contr/Warr-not Fraud (General) |